[No. B200339. Second Dist., Div. Five. Sept. 15, 2008.]

AL VARISCO, Plaintiff and Appellant, v.
GATEWAY SCIENCE AND ENGINEERING, INC., Defendant and
Respondent.

**COUNSEL**

Dickson & Associates and Roy C. Dickson for Plaintiff and Appellant.

Ford & Harrison, Lyne A. Richardson and Steve M. Kroll for Defendant and Respondent.

OPINION

**ARMSTRONG, Acting P. J.**—Appellant Al Varisco sued respondent Gateway Science and Engineering, Inc., for wrongful termination of employment and similar causes of action, all of which depended on the allegation that he had been Gateway's employee. Gateway moved for summary judgment on the ground that Varisco was not an employee, but an independent contractor. The trial court found for Gateway, and we affirm. All the undisputed facts add up to an independent contractor relationship. A single clause in the parties' letter agreement which allowed either party to terminate at will did not transform that relationship into an employment relationship.

### Background and Contentions

Gateway provides professional services such as project management, planning and design management, inspection, and quality assurance to the construction industry. Varisco is a construction inspector and has a Class 1 inspector certification from California's Division of the State Architect (DSA). In early 2004, he contacted Gateway, seeking work. Gateway then had a contract with the Los Angeles Unified School District (LAUSD), under which it was to provide certified project inspectors for projects then under construction.

Gateway responded to Varisco's call, and on January 30, 2004, Varisco and Gateway signed a letter agreement in which Varisco agreed to provide "DSA Inspection Services to the Los Angeles Unified School District (Client)" and Gateway agreed to pay him an hourly rate.

Varisco provided inspection services on two Gateway-LAUSD projects. His relationship with Gateway ended in November 2004, when Gateway sent him a letter terminating the agreement, citing his refusal to sign a new contract or to provide various documents.

He filed this lawsuit, bringing causes of action titled tortious termination of employment contract in violation of public policy, breach of implied contract of continued employment, and breach of the implied covenant of good faith and fair dealing. Each cause of action alleged that Varisco was Gateway's employee. Gateway moved for summary judgment, contending that Varisco was an independent contractor, not an employee. The trial court found that Varisco had no evidence to dispute the assertion that he was an independent contractor pursuant to an at-will agreement, and granted the motion. On appeal, Varisco concedes that the causes of action are viable only if he was an employee, not an independent contractor. (*Sistare-Meyer v. Young Men's*

*Christian Assn.* (1997) 58 Cal.App.4th 10, 14 [67 Cal.Rptr.2d 840] [independent contractor cannot sue for wrongful discharge in violation of public policy].)

On this review of judgment after summary judgment, the question before us is whether defendant, Gateway, met its burden of showing that an element of each cause of action, i.e., that Varisco was an employee, could not be established (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653]), or whether, as Varisco contends, there is a triable issue of fact on the issue. We conduct an independent review on appeal. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 978–979 [21 Cal.Rptr.2d 834].)

Legal Principles

■ Control is the principal factor in determining whether an individual worker is an employee or an independent contractor. "An independent contractor is 'one who renders service in the course of an independent employment or occupation, following his employer's desires only in the results of the work, and not the means whereby it is to be accomplished.' [Citations.] On the other hand, the relationship of master and servant or employer and employee exists whenever the employer retains the right to direct how the work shall be done as well as the result to be accomplished. [Citations.] But this rule requires that the right to exercise complete or authoritative control, rather than mere suggestion as to detail, must be shown. [Citations.] Also, the right to control, rather than the amount of control which was exercised, is the determinative factor." (*S. A. Gerrard Co. v. Industrial Acc. Com.* (1941) 17 Cal.2d 411, 413–414 [110 P.2d 377].)

Thus, the most significant question in the independent contractor/employee determination is " 'whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.]" (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*).)

Case law has identified secondary indicia of the nature of the relationship. These are "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a

part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Borello, supra*, 48 Cal.3d at p. 351.)

Facts

The relevant undisputed facts were as follows: The January 30, 2004 letter agreement between Varisco and Gateway provided that Varisco would be compensated at $75 per hour, "with no benefits such as medical, dental, paid sick, vacation and holidays." It provided that Gateway would cover for professional and general liability insurance, that Varisco would be required to complete Gateway timesheets, and that "Overtime does not apply unless authorized by Los Angeles Unified School District."

Under "scope of work," the letter referenced a second document, which Varisco also signed on January 30. That document is titled "Duties of the Inspection Contractor." It provides that the inspector must "Perform all inspections and coordinate all testing and special inspections as required of the Project Inspector in Title 24 of the California Code of Regulations and the project documents,"[1] and "provide inspection that insures an acceptable finished product and a complete project that conforms to Title 24 of the California Code of Regulations and the project documents." It also provides that the inspector must complete the "DSA Final Verified Report" and submit it to the LAUSD Chief Construction Inspector within five days of the final inspection, complete semimonthly reports on LAUSD forms and submit them to the LAUSD Chief Construction Inspector within two days of the reporting period, complete daily diaries on LAUSD-provided diary books and submit them to the LAUSD Chief Construction Inspector at final inspection or when requested, and maintain a project file of specified forms and documents, again to be submitted to the LAUSD Chief Construction Inspector.

The "Duties" document also provides that construction problems revealed by an inspection were to be reported to the LAUSD.

When Varisco signed the January 30 letter agreement and its attachment, he understood that he was entering into an independent contractor relationship with Gateway and not an employment relationship. He so testified at his deposition. He also testified that "I did not work for Gateway. Gateway acted as my agent to hook me up with L.A. Unified School District . . ." and "I did not and would not, I would never work for Gateway."

Varisco received an IRS form 1099 for all his compensation from Gateway. Gateway did not provide any uniform, apparel, equipment, material, or tools

---

[1] Title 24 of the California Code of Regulations is the California Building Standards Code.

to him. Varisco wore his own hardhat and work boots, mandatory apparel on the jobsite. He testified that "as an independent contractor" he provided his own equipment. He used his own car for transportation to and from the jobsite, and was not reimbursed for mileage or gas. Gateway did not provide any training to Varisco. His work hours were established by the architect of record, not Gateway. He went to Gateway offices twice a month to pick up his paycheck, and never at any other time. If he had ever needed to call in sick, the call would have been to the LAUSD, not to Gateway.

Gateway did not have personnel at the LAUSD jobsites. When issues or questions arose at the jobsite, he addressed them to the LAUSD architect, not Gateway. When asked "did Gateway give you any direction on how to perform your duties?" Varisco answered "no."

Gateway's relationship with Varisco ended when he refused to sign a new contract. When Gateway first approached Varisco about the contract, he asked whether he was getting a raise. When he learned that he was not, he said that he saw no reason to sign a new contract. At that time, he also learned that Gateway had decided that inspectors should pay their own car insurance. Two or three months later, Gateway sent him a new contract. It required him to pay his own car insurance and workers' compensation insurance, and he refused to sign it.

Gateway notified the LAUSD that it was terminating its agreement with Varisco and that, with the cooperation of the LAUSD, it had selected another inspector.

## Analysis

The undisputed facts establish that Varisco was an independent contractor, and not an employee.[2] The principal issue is the right to control the "manner and means" of accomplishing the work, and the facts are that Gateway had no such control, and no right to such control.

Varisco was a construction inspector, and his job was to ensure that the project met the requirements set out in the California Code of Regulations. Gateway entered into an agreement with him, paid him, and sent him to the jobsite so that he could exercise his skill and accomplish the result, but that is all that Gateway did.

---

[2] "Whether a person is an employee or an independent contractor is ordinarily a question of fact but if from all the facts only one inference may be drawn it is a question of law." (*Brose v. Union-Tribune Publishing Co.* (1986) 183 Cal.App.3d 1079, 1081 [228 Cal.Rptr. 620].)

All of Varisco's reports were to the LAUSD, often on LAUSD forms. If an inspection revealed a problem, Varisco reported it to the LAUSD, not Gateway. If he had a question, he asked the architect, not Gateway. Gateway, which did not have a representative at the jobsite, does not even seem to have known the details of Varisco's work, and certainly could not have controlled them.

Other *Borello* factors are in accord. Varisco engaged in skilled work, in a distinct occupation. He supplied his own clothes and equipment. He received no benefits. The parties clearly believed that they were entering into an independent contractor agreement.

Varisco argues that some of the factors indicate that he was an employee.[3] For instance, based on an undisputed fact to that effect, he argues that construction inspection was part of Gateway's regular business. He also argues that the fact that he was paid by the hour, not the project, indicates that he was an employee. An hourly rate traditionally indicated an employment relationship (*Mattoon v. Steiff* (1954) 123 Cal.App.2d 512 [266 P.2d 920]; *Washko v. Stewart* (1937) 20 Cal.App.2d 347 [67 P.2d 144]) but independent contractors are now commonly paid on that basis (*National Elevator Services, Inc. v. Department of Industrial Relations* (1982) 136 Cal.App.3d 131, 140 [186 Cal.Rptr. 165]).

At any rate, even if one or two of the factors set forth in *Borello* do suggest an employment relationship, when all the factors are weighed and considered as a whole (*Borello, supra,* 48 Cal.3d at p. 351), Varisco was not an employee. The principal issue is control, and Gateway had none.

Varisco's main argument is that an at-will clause in the January 30 letter agreement means that he was an employee. The clause reads "The employee or [Gateway] may terminate with or without cause and with or without notice employment At-Will at any time. Nothing in this agreement or in any document statement shall limit the right to terminate *At-Will* employment. No manager, supervisor or employee of [Gateway] has any authority to enter into

---

[3] Varisco also cites the fact that the application he filled out for Gateway is titled an "employment" application, and that an LAUSD form refers to him as Gateway's employee. The title of the form is of little weight, and the LAUSD's characterization is of no weight at all. He also argues that Gateway's contract with the LAUSD prohibited Gateway from using subcontractors. The original contract between Gateway and the LAUSD (dated Mar. 31, 2003) contained such a restriction, but the relevant contract, the one operative during Varisco's relationship with Gateway, provides that "Contractor may use subcontractors in performing the services."

an agreement for employment for any specified period of time or to make an agreement for employment for any specified period of time or to make an agreement for employment other than *At-Will* terms."

Legally, Varisco relies on cases such as *Burlingham v. Gray* (1943) 22 Cal.2d 87 [137 P.2d 9], and *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864 [269 Cal.Rptr. 647], both of which recite the rule that " 'One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed.' [Citation.] The real test has been said to be 'whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct . . . .' [Citations.] 'Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.' " (*Burlingham, supra*, 22 Cal.2d at pp. 99–100; see also *Toyota Motor Sales, supra*, 220 Cal.App.3d at p. 875 ["the unlimited right to discharge at will and without cause has been stressed by a number of cases as a strong factor demonstrating employment"].) As Varisco reads this rule, the at-will clause controls this case. We cannot see that the cases so hold.

■ An independent contractor agreement can properly include an at-will clause giving the parties the right to terminate the agreement. Such a clause does not, in and of itself, change the independent contractor relationship into an employee-employer relationship. If it did, independent contractor arrangements could only be established through agreements which limited the right of a party, or perhaps both parties, to terminate the agreement. This would be absurd, and it is not the law.

Neither *Burlingham* nor *Toyota Motor Sales* concerned independent contractor agreements terminable at will by either party. Instead, both cases arose from car accidents. In *Burlingham*, the tortfeasor was a newspaper deliveryman/salesman, and in *Toyota Motor Sales*, the tortfeasor was delivering pizza. In both cases, the defense was that the tortfeasor was not an employee, but an independent contractor.

The holding of *Burlingham* was that the issue should have gone to the jury. The court found, "Aside from the right of immediate termination of [the deliveryman's] agency reserved by the company under the written contract, the extensive supervision exercised by the company over [the deliveryman's] activities as dealer, together with his designation as an employee under the group insurance plan and on the 'Designation of Beneficiary' form, and his

annual vacation 'with pay,' might well have served to convince the jury that the company's right of control . . . was complete and that any instructions given . . . would be obeyed." (*Burlingham v. Gray, supra*, 22 Cal.2d at p. 101.)

In *Toyota Motor Sales*, the Court of Appeal found no substantial evidence for the trial court's conclusion that the deliveryman was an independent contractor. The evidence in that case was that the pizza franchise owner directed and controlled the number, nature and type of pizzas to be delivered, the time when the deliveries would take place, the persons and locations to whom they would be delivered and the price to be charged. The only evidence offered in support of a finding that the deliveryman was an independent contractor was that he provided his own car, expenses and insurance, factors identified in the case law as secondary factors. The court concluded that the deliveryman "was subject to . . . total control as to all aspects of his job. When [he] reported to work, how long he worked, when he made deliveries and to whom and for what purpose were all dictated and controlled by [the franchise owner] . . . . [The deliveryman's] only responsibility was to deliver, collect the money and return. Finally, [the franchise owner] retained the express contractual right to terminate the relationship at any time and without cause." (*Toyota Motor Sales U.S.A., Inc. v. Superior Court, supra*, 220 Cal.App.3d at p. 877.)

In both cases, the right to fire indicated that the work was controlled and instructions had to be obeyed. Neither case concerned a professional like Varisco, who exercised his skill and discretion without oversight, and reported directly to a client. Gateway could "instruct" Varisco to sign a new contract, and it terminated the agreement when he would not do so, but Gateway did not control his work, and the at-will clause does not mean that it did.

When all the factors are considered and weighed, we can conclude only that the parties entered into an independent contractor agreement and conducted themselves accordingly.

█ "While the right to discharge a person at any time, without recourse, has been held to be a strong circumstance tending to show the subserviency of the employee [citation], it is of less significance in a case of this sort, where it fits in equally with the theory of an independent association. In this regard, both parties testified that the right to terminate their arrangement was a mutual one. [¶] We think these circumstances show an association, rather than the relation of employer and employee." (*Royal Indemnity Co. v. Industrial Acc. Com.* (1930) 104 Cal.App. 290, 297–298 [285 P. 912].)

## Disposition

The judgment is affirmed. Respondent to recover costs on appeal.

Mosk, J., and Kriegler, J., concurred.