[No. A131440. First Dist., Div. One. Dec. 30, 2011.]

KIMBLY ARNOLD, Plaintiff and Appellant, v.
MUTUAL OF OMAHA INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Initiative Legal Group, Monica Balderrama, Glenn A. Danas and Katherine W. Kehr for Plaintiff and Appellant.

Seyfarth Shaw, Francis J. Ortman III, Eden Anderson and Robb D. McFadden for Defendant and Respondent.

OPINION

MARCHIANO, P. J.—Plaintiff Kimbly Arnold worked as a nonexclusive insurance agent for Mutual of Omaha Insurance Company (Mutual). After plaintiff terminated her contractual relationship with Mutual, she filed suit claiming unpaid employee entitlements under the Labor Code.[1] She appeals from a summary judgment in favor of defendant Mutual, in which the trial court determined Ms. Arnold's causes of action depended on her being a former "employee" of Mutual, and the undisputed facts established she was not an employee, but rather an independent contractor. Arnold claims the court erred in concluding the common law test for employment was applicable to determine whether she was an "employee," arguing that a broader statutory definition of "employee" is applicable under section 2750. Alternatively, she contends the court incorrectly applied the common law test when it determined there were no triable issues of material fact and concluded she was not an "employee" as a matter of law. As discussed below, we conclude after a de novo review the trial court was correct, and we affirm the summary judgment.

BACKGROUND

On January 25, 2010, Arnold filed a complaint against Mutual on her behalf and on behalf of a class of other persons similarly situated, whom Mutual allegedly employed as a "Licensed Agent" or "Sales Representative." The complaint consisted of three causes of action. The first cause of action

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

alleged Mutual failed to reimburse Arnold and class members fully for "necessary business-related expenses and costs" to which they were entitled under sections 2800 and 2802.[2] The second cause of action alleged Mutual had willfully failed to pay Arnold and class members for wages earned but unpaid prior to their being discharged from employment or prior to their quitting employment, for which they were entitled to recover under sections 201, 202 and 203.[3] A third cause of action alleged Mutual's conduct violating Labor Code sections 2800 and 2802 additionally constituted an unlawful business practice in violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), for which Arnold and class members sought compensation, an injunction requiring Mutual to pay all outstanding wages, costs, and attorney's fees under Code of Civil Procedure section 1021.5.

■ Mutual filed a motion for summary judgment on September 28, 2010, contending Arnold's first two causes of actions "hinge[d] entirely on her alleged status as an 'employee' of Mutual." For example, reimbursement under section 2802 is due only to an "employee" who incurs necessary expenditures or losses, whereas a claim for earned but unpaid wages under section 202 arises only when an "employee" quits his or her employment. Mutual argued these provisions of the Labor Code were not subject to a statutory definition of "employee,"[4] and consequently were subject to the common law test of employment. According to Mutual, undisputed material facts established Arnold was an independent contractor rather than a former employee under the common law test, and hence, she was not entitled to any relief under her first or second causes of action. Because Arnold's third cause of action under the UCL was derivative of her first cause of action, it similarly afforded her no relief as a matter of law.

■ In making this argument, Mutual relied in part on the Supreme Court decision in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*

---

[2] Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." (§ 2802, subd. (a).) Section 2800, on which Arnold's first cause of action also relied, requires an employer to indemnify an employee for losses arising from the employer's want of ordinary care.

[3] Section 201 requires an employer who discharges an employee to pay immediately any earned but unpaid wages, whereas section 202 requires a similar payment within 72 hours of notice when an employee quits (and does not have a written contract for a definite period of employment). (§§ 201, subd. (a), 202, subd. (a).) Section 203 provides for penalties when an employer willfully fails to make payments in violation of sections 201 and 202. (§ 203, subd. (a).)

[4] In particular, the statutory definition of "employee" set out in section 3351 applies only to the Workers' Compensation Act (§ 3200 et seq.) and not to those divisions of the Labor Code that include sections 202 and 2802. (See § 3350.)

(1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*), which restated the " 'principal test of an employment relationship' " under common law to be " 'whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' " (*Id.* at p. 350.) *Borello* recognized that this "principal" factor of the common law test, focusing on the issue of control, was not exclusive, and articulated "[a]dditional factors." (*Id.* at p. 351.) These were whether the principal has the right to discharge at will, without cause; whether the one performing services is engaged in a distinct occupation or business; the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; the skill required in the particular occupation; whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the services are to be performed; the method of payment, whether by the time or by the job; whether or not the work is a part of the regular business of the principal; and, whether or not the parties believe they are creating the relationship of employer-employee. (*Borello, supra*, 48 Cal.3d at pp. 350–351.) The court in *Borello* observed that such " 'individual factors' " were not to be " 'applied mechanically as separate tests,' " but were "intertwined," and often given weight depending on the particular combination of factors. (*Id.* at p. 351.)

Supporting evidence showed Arnold was licensed by the Department of Insurance as an independent agent or broker, authorized to offer products to prospective clients from different companies. When she first contracted with Mutual, in November 2006, she was under appointment with another insurance company to offer its products, and while under that appointment had acted on behalf of a third insurance company. At both of these insurance companies she performed as an independent contractor, receiving commissions and 1099 tax forms for that income.

Under Arnold's contract with Mutual, the latter appointed her as a nonexclusive "agent" to solicit and procure applications for Mutual's products. Arnold had the responsibility to maintain the proper licenses required to perform this service. Her chief duties were to procure and submit applications for Mutual's products, collect moneys, and service clients. Compensation was by commission for products sold, with a chargeback on any commission paid when moneys for sale of a product were uncollected or refunded. Either party could terminate the contract with or without cause through written notice to the other, with automatic termination in the event Arnold failed to submit an application for one of Mutual's products for a period of 180 days.

One clause of the contract stated that Arnold was "an independent contractor and not an employee," that no terms of the contract "shall be construed as

creating an employer-employee relationship," and that Arnold was "free to exercise [her] own judgment as to the persons from whom [she] will solicit and the time, place and manner, and amount of such solicitation." During her deposition, Arnold said she had read the contract, and understood when she signed it that her appointment with Mutual was as an independent contractor. She agreed she used her own judgment in tending to her business and more particularly in determining whom she would solicit for applications for Mutual's products, when and where she would do so, and the amount of time she spent engaging in such solicitations.

Arnold exercised her contractual right to terminate her appointment with Mutual by a letter dated March 24, 2008, which advised Mutual that she had entered into a contract to represent another insurance company exclusively, and was prohibited from maintaining her appointment with Mutual.

The assistant general manager of Mutual's sales office in Concord averred he supervised the process of agent appointments to that office, and as such was familiar with Arnold's appointment in 2006. During her appointment with Mutual, Arnold did not receive performance evaluations, and he did not monitor or supervise her work schedule. While he conducted meetings and offered training sessions to appointed agents such as Arnold, their attendance was not required. Agents assigned to the Concord office were required to pay for their own business expenses; Mutual did not provide business cards, vehicles, or computers free of charge. Agents could, but were not required to work "out of the Concord office," but if they chose to do so, they were required to pay monthly fees to cover "workspace and telephone service." Items purchased by Arnold from Mutual appeared on a monthly "Agent Expense Statement." At the time Arnold terminated her appointment in March 2008, she owed Mutual approximately $2,288 for such expenses. These expenses remained unpaid as of September 2010.

After a hearing, the trial court granted Mutual's motion for summary judgment, observing it was "very confident" Arnold was "not an employee." Its written order ruled that all three of Arnold's causes of action were dependant on her status as an "employee" of Mutual rather than as an independent contractor. In determining her status, the court found "the common law test" applicable to determine whether she was an "employee," in the absence of an applicable statutory definition. Applying the common law test, the court concluded undisputed facts established that Arnold was an independent contractor and not an employee within the meaning of sections 202 and 2802.

Notice of entry of judgment was entered the same day. Arnold's appeal followed. (See Code Civ. Proc., § 437c, subd. (m)(1).)

## DISCUSSION

### A. *Standard of Review*

We review a grant of summary judgment independently. (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128 [33 Cal.Rptr.3d 287]; see *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355–356 [105 Cal.Rptr.2d 749].) Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A defendant seeking summary judgment must thus establish that one or more essential elements of the plaintiff's cause of action cannot be established. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, at p. 850; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*).)

### B. *Applicability of the Common Law Test for Employment*

Arnold contends it was error to apply the common law test expressed in *Borello, supra*, 48 Cal.3d 341, to determine whether she was an "employee" within the meaning of section 2802—the alleged violation of which formed the basis of both her first cause of action, as well as the derivative third cause of action under the UCL. She reasons section 2750 provides a statutory definition that governs the meaning of "employee" as it is used in section 2802, and undisputed facts established her as an "employee" within the broader definition supplied by section 2750.

■ A statute will be construed in light of the common law unless the Legislature clearly and unequivocally indicates otherwise. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1086–1087 [32 Cal.Rptr.3d 483, 116 P.3d 1162], disapproved on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62–66 [109 Cal.Rptr.3d 514, 231 P.3d 259].) Thus, when a statute refers to an "employee" without defining the term, courts have generally applied the common law test of employment to that statute. (See *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 [9 Cal.Rptr.3d 857, 84 P.3d 966].)

One reviewing court has recently held the Labor Code does *not* expressly define "employee" for purposes of section 2802, and therefore, the common law test of employment applies to that section. (*Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10 [64 Cal.Rptr.3d 327] (*Estrada*).) That court went on to cite the "principal" and "additional factors"

of the common law test as articulated by the Supreme Court in *Borello, supra,* 48 Cal.3d 341, and summarized above. (*Estrada, supra,* at p. 10.)

It is unclear whether the reviewing court in *Estrada, supra,* 154 Cal.App.4th 1, was called upon to consider whether section 2750 provided the statutory definition of "employee" when it concluded such a definition did not exist. In any event, section 2750 does not supply such a definition of "employee" that *is clearly and unequivocally intended to supplant the common law definition* of employment for purposes of section 2802. It is true section 2750—like section 2802—is a part of division 3 of the Labor Code (Employment Relations). However, section 2750 provides only that "[t]he contract of employment is a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer or a third person." (§ 2750.) As such, it does not attempt to define "employee" so much as it uses the term "employee" in defining "contract of employment." At least one court has considered section 2750 and concluded it was to be viewed *with,* and not instead of, the common law test for employment. (See *Randolph v. Budget Rent-A-Car* (9th Cir. 1996) 97 F.3d 319, 325.)

Further, we note two statutes that immediately follow section 2750, which together with section 2750 form a part of article 1 of chapter 2 in division 3 of the Labor Code. These sections provide rebuttable presumptions, respectively, that a licensed contractor is an employee rather than an independent contractor, and a physician working for a primary care clinic is an independent contractor rather than an employee. (§§ 2750.5, 2750.6.) These presumptions clearly qualify, in particular cases, the common law distinction between "employee" and "independent contractor." As such, they would conflict with section 2750 were it to be construed to supplant the application of that distinction.

We are not persuaded otherwise by Arnold's arguments concerning the legislative history of division 3 of the Labor Code. Whatever the scope of former division 3 when it was first enacted as part of the Civil Code, that division since 1937 has been limited in its application to situations not otherwise covered by the Workers' Compensation Act set out in divisions 4 and 4.5 of the Labor Code. (See Lab. Code, § 2700; see also Code Commission Notes, 44C West's Ann. Lab. Code (2011 ed.) foll. § 2700, p. 135.) Nor are we persuaded by her reliance on *Foxx v. Williams* (1966) 244 Cal.App.2d 223 [52 Cal.Rptr. 896] (*Foxx*). The Court of Appeal in *Foxx* considered section 2750 only in the context of a contract for personal services under section 2855, and in light of the since repealed provisions of chapter 3 of division 3 (former § 3000 et seq., enacted by Stats. 1937, ch. 90, pp. 261–262 and repealed by Stats. 1969, ch. 1537, § 1, p. 3132), relating to

"Master and Servant." In this context, the court simply observed that "employee," as used in section 2750 appeared inferentially to have a broader meaning than "servant" in former section 3000. (*Foxx, supra,* 244 Cal.App.2d at p. 240.) Nowhere does the holding in *Foxx* contradict the recent holding in *Estrada, supra,* 154 Cal.App.4th 1, that the common law test for employment applies to define "employee" in section 2802.

We conclude the trial court correctly determined the common law test of employment was applicable for purposes of section 2802, in conformity with *Estrada, supra,* 154 Cal.App.4th at page 10.

## C. *Application of the Common Law Test to the Evidence*

Arnold claims—to the extent the common law test for employment was applicable to her causes of action—that the trial court nevertheless applied it incorrectly, largely because it based its decision on facts relating to the degree of control Mutual *actually* asserted over her work instead of the degree of control Mutual *was entitled* to assert. She urges, in effect, her opposing evidence raised a triable issue of material fact as to whether she was an "employee" rather than an "independent contractor."

In conducting our independent review, we view Arnold's opposing evidence liberally, and Mutual's supporting evidence strictly, to determine whether a triable issue of material facts exists. (See *Saelzler, supra,* 25 Cal.4th at p. 768.)

In support of her argument, Arnold cites to her opposing statement listing triable issues of material fact. We examine the opposing *evidence* rather than the opposing party's characterization of that evidence in his or her opposing statement of undisputed and disputed material facts. (See Code Civ. Proc., § 437c, subd. (c).) The evidence has telling characteristics. It shows, for example, that Mutual managers make themselves available to assist agents, as distinguished from supervising them. Training is generally not mandatory and is offered chiefly for the guidance of "new" agents. Training is required only with respect to compliance with state law directives. Managers provide assistance with sales or clients when an agent "wants them to assist." Software is provided by Mutual as a "best practice" to enable agents to sell its products more successfully. Conference rooms, if available, are provided as a courtesy to agents seeking to set up a meeting and having no other space in the office. Mutual policy does not otherwise reimburse agents for regular business expenses, such as entertaining a client, although it does provide certain "prospecting" credits, beginning when an agent is newly appointed, by which the agent might apply for reimbursement for mailings, newsletters, and similar expenses to generate new business for Mutual products. The credits

must be used and have no separate compensatory value. While Mutual pays its agents in two-week periods, payments are comprised of commissions and bonuses established by policy, and there is no guaranteed compensation; advances may be authorized only by a general manager in the event an agent has submitted an application for which a policy is likely to be issued. Advances are rare, due to the policy to pay commissions only on business actually issued, as opposed to routine advances for the purpose of regularizing payment amounts.

■    After a careful review of the opposing evidence, we find nothing that raises a *material* conflict with the supporting evidence summarized above. The salient evidentiary points established Arnold used her own judgment in determining whom she would solicit for applications for Mutual's products, the time, place, and manner in which she would solicit, and the amount of time she spent soliciting for Mutual's products. Her appointment with Mutual was nonexclusive, and she in fact solicited for other insurance companies during her appointment with Mutual. Her assistant general manager at Mutual's Concord office did not evaluate her performance and did not monitor or supervise her work. Training offered by Mutual was voluntary for agents, except as required for compliance with state law. Agents who chose to use the Concord office were required to pay a fee for their workspace and telephone service. Arnold's minimal performance requirement to avoid automatic termination of her appointment was to submit one application for Mutual's products within each 180-day period. Thus, under the principal test for employment under common law principles, Mutual had no significant right to control the manner and means by which Arnold accomplished the results of the services she performed as one of Mutual's soliciting agents. (*Borello, supra*, 48 Cal.3d at p. 350.)

The additional factors of the common law test also weigh in favor of finding an independent contractor relationship. Although Mutual could terminate the appointment at will, a termination at-will clause for both parties may properly be included in an independent contractor agreement, and is not by itself a basis for changing that relationship to one of an employee. (*Varisco v. Gateway Science & Engineering, Inc.* (2008) 166 Cal.App.4th 1099, 1107 [83 Cal.Rptr.3d 393] (*Varisco*).) Notably, Arnold was engaged in a distinct occupation requiring a license from the Department of Insurance, and was responsible for her own instrumentalities or tools with the exception of limited resources offered by Mutual to enhance their agents' successful solicitation of Mutual's products. Arnold was required to pay a fee for the use of Mutual's office space and telephone service. Although Mutual paid its agents in a systematic way every two weeks, Arnold's payment itself— chiefly commissions—was based on her results and not the amount of time she spent working on Mutual's behalf. Finally, both Arnold and Mutual

believed, at the time of her appointment, they were creating an independent contractor relationship and not an employee relationship. (*Borello, supra,* 48 Cal.3d at pp. 350–351.)

The existence and degree of each factor of the common law test for employment is a question of fact, while the legal conclusion to be drawn from those facts is a question of law. (*Harris v. Vector Marketing Corp.* (N.D.Cal. 2009) 656 F.Supp.2d 1128, 1136.) Even if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper when, as here, all the factors weighed and considered as a whole establish that Arnold was an independent contractor and not an employee for purposes of sections 202 and 2802. (See *Varisco, supra,* 166 Cal.App.4th at p. 1106.) In light of the evidence, we have little difficulty concluding the trial court reached the correct conclusion when it applied the common law test for employment articulated in *Borello, supra,* 48 Cal.3d 341, to the evidence presented in this case.

We note Arnold objects to certain decisions cited by the trial court in its order granting the motion for summary judgment. Having found it unnecessary to rely on those decisions in conducting our de novo review, we deem it unnecessary to address the merits of this objection.

### DISPOSITION

The judgment is affirmed.

Margulies, J., and Dondero, J., concurred.