Filed 6/24/13  Shin v. Farmers Group CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUN-WOO SHIN, | B240989 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC448413) |
| v. | |
| FARMERS GROUP, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Susan Bryant-Deason, Judge.  Affirmed.

The Anfanger Law Office, Nancy B. Anfanger for Plaintiff and Appellant.

Locke Lord, Stephen A. Tuggy, Nina Huerta for Defendants and Respondents.

_____

Plaintiff Sun-Woo (Sunny) Shin appeals from a judgment after an order granting summary judgment was entered in favor of defendants Farmers Group, Inc., Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively, Farmers).  Shin brought various claims, all of which were dependent on the existence of an employer-employee relationship with Farmers.  The trial court found that Shin was an independent contractor and on that basis granted summary judgment in favor of Farmers.  We affirm.

## BACKGROUND

### Facts

Shin was experienced in insurance sales and marketing.  In 2002, he became a Farmers reserve district manager, with the goal of eventually becoming a district manager.  In late 2003, he applied for a district manager position with Farmers, believing that he would run the district assigned to him as his own business.  In connection with his application, Shin submitted a "personal history form" that stated:  "This is not an application for employment, but an application for appointment as an independent-contractor district manager representing our organization."

Shin prepared a "business continuation plan" that contained a mission statement, a strategic plan, a description of how he would organize and manage his business, and a detailed expense budget.  Among other things, Shin's plan contained the statement:  "As the business owner the district manager needs to select quality candidates to staff his office."  It further stated that he would organize the business as a separate corporation and would invest his own funds and a percentage of his overwrite (commission) into the business.

Shin was appointed as a Farmers district manager in January 2004.  The "District Manager's Appointment Agreement" (DMAA) signed by Shin stated:  "Nothing contained herein is intended or shall be construed to create the relationship of employer and employee.  The time to be expended by District Manager is solely within his/her discretion, and the persons to be solicited and the area within the district involved

2

wherein solicitation shall be conducted is at the election of the District Manager. No control is to be exercised by [Farmers] over the time when, the place where, or the manner in which the District Manager shall operate in carrying out the objectives of this Agreement provided only that they conform to normal good business practice, and to all State and Federal laws governing the conduct of [Farmers], and [its] Agents." Related agreements, also signed by Shin, expressly stated he was being retained as an independent contractor. The DMAA stated that, as district manager, Shin would "recruit for appointment and train as many agents acceptable to [Farmers] as may be required to produce sales in accordance with goals and objectives established by [Farmers]." Shin described his "main duty" as "increas[ing] policies sold in the district where I was assigned as District Manager . . . and to market."

After appointment as district manager, Shin incorporated his business as "Sunny Shin Insurance Agency" (SSIA) and acquired an employer identification number from the Internal Revenue Service. Shin invested $20,000 of his own cash in the business and leased a set of offices in Anaheim Hills. He hired staff for the business, determining whom to hire, how much he and his staff would be paid, and what hours they would work. Shin retained a payroll services firm to process SSIA's payroll, and he paid his employees' salaries. He bought computer equipment and services, office supplies, and other business expenses. Eventually, Shin refinanced his home three times to provide cash to support the district manager business.

Farmers communicated with Shin to encourage him to achieve Farmers' desired results; i.e., that Shin, through SSIA, would train and recruit agents to achieve a certain level of sales in the district. Farmers developed marketing programs to promote the sale of its insurance products. Under the DMAA, Shin was required to train agents in his district to use those marketing programs.

**Procedural Background**

Shin's district manager relationship with Farmers was not financially successful and ended in August 2008. In October 2010, Shin initiated this lawsuit. The operative third amended complaint, filed in August 2011, alleged claims for (1) failure to pay

3

wages (Lab. Code, § 200 et seq.); (2) wrongful termination in violation of public policy; (3) failure to indemnify (Lab. Code, § 2802); (4) withholding of wages (Lab. Code, § 221); (5) failure to pay minimum wages and overtime compensation (Lab. Code, §§ 1194, 1197); and (6) unfair business practices (Bus. & Prof. Code, § 17200 et seq.). Shin contended that as a district manager he was improperly classified as an independent contractor, when he was actually an employee of Farmers.

Farmers brought its motion for summary judgment in September 2011. In support of its motion, Farmers submitted a considerable amount of evidence obtained through discovery and by declaration, and referred to the evidence in detail in its separate statement. Shin's responsive separate statement, on the other hand, was defective. It purported to dispute a number of facts without actually disputing the primary content of the facts, it often cited to irrelevant or nonexistent evidence, and citations to the record were overly vague or otherwise deficient. Shin relied almost entirely on his own declaration for evidence, and much of the declaration was struck when Farmers' objections were sustained by the trial court.

The trial court heard Farmers' motion for summary judgment in January 2012. Finding that Shin's claims could only be asserted by an employee and determining that the evidence submitted by Farmers demonstrated that Shin was an independent contractor, the trial court granted the motion for summary judgment.

Shin timely appealed.

## DISCUSSION

### I. Standard of review

The judgment is appealable. (Code Civ. Proc., § 437c, subd. (m)(1).) Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).) The moving papers are strictly construed, while the opposition is liberally construed in the most favorable light; evidentiary doubts or ambiguities are resolved in plaintiff's favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Nevertheless, plaintiff "may not rely upon the mere allegations or denials of its

4

pleadings" but instead must "set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Review is de novo. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)

## II. Plaintiff's claims were all dependent on employee status

Shin acknowledges that each of his claims (including the unfair business practices claim, which is derivative of the others) can only be asserted by an employee, not an independent contractor.

The common law test for determining whether an employment relationship exists was set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*): "'[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .'" (*Id.* at p. 350.) This primary test is often insufficient when applied in isolation, however, and so courts look to a number of other factors, including "whether the principal has the right to discharge at will, without cause; whether the one performing services is engaged in a distinct occupation or business; the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; the skill required in the particular occupation; whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the services are to be performed; the method of payment, whether by the time or by the job; whether or not the work is a part of the regular business of the principal; and, whether or not the parties believe they are creating the relationship of employer-employee." (*Arnold v. Mutual of Omaha Ins. Co.* (2011) 202 Cal.App.4th 580, 584 (*Arnold*); *Borello*, *supra*, 48 Cal.3d at pp. 350-351.) These factors are not "'applied

5

mechanically as separate tests,'" but instead are "intertwined" and their weight depends on a combination of factors. (*Borello*, at p. 351.)

This common law test for determining an employment relationship applies to Shin's first, third, and fourth causes of action for failure to pay wages (Lab. Code, § 200 et seq.), failure to indemnify (Lab. Code, § 2802), and withholding of wages (Lab. Code, § 221). Each of these causes of action refers to an "employee" without defining the term, and none is subject to a definition of "employee" found in the Labor Code. As such, the common law definition of "employee" applies to each. (*Arnold*, *supra*, 202 Cal.App.4th at pp. 586-587; *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10 (*Estrada*); *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500.) Because Shin's unfair business practices cause of action is derivative of these three causes of action, it is also governed by the common law definition. (*See Arnold*, at pp. 586-587.) Likewise, Shin's second cause of action for wrongful termination in violation of public policy is subject to the common law standard. (*Varisco v. Gateway Science & Engineering, Inc.* (2008) 166 Cal.App.4th 1099, 1102-1104 [applying *Borello* test to claim of "tortious termination of employment contract in violation of public policy"]; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 898-900 [wrongful termination in violation of public policy claim requires employer-employee relationship].)

The only cause of action asserted by Shin that is not strictly subject to the common law standard for deciding whether a party is an independent contractor or an employee is his claim for failure to pay minimum wages and overtime compensation (Lab. Code, §§ 1194, 1197). Rather, for this cause of action, to determine whether an employment relationship existed, we turn to the relevant wage order promulgated by the Industrial Welfare Commission. (*Martinez v. Combs* (2010) 49 Cal.4th 35, 52, 56-57 (*Martinez*).) *Martinez* examined the wage order applicable to agricultural occupations, but the wage order at issue here, Wage Order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040), contains the same definitions of "employ" and "employer" that were analyzed in *Martinez*. (*See Martinez*, at p. 59.) The wage order defines "employ" as "to engage, suffer, or permit to

6

work." (Cal. Code Regs., tit. 8, § 11040, subd. 2(E).) The definition of "employer" "logically incorporates the separate definition of 'employ' (i.e. 'to engage, suffer, or permit to work') as one alternative." (*Martinez, supra,* 49 Cal.4th at p. 59.) It also includes anyone who "'exercises control over . . . wages, hours, or working conditions.'" (*Ibid.*; Cal. Code Regs., tit. 8, § 11040, subd. 2(H).)

The *Martinez* decision noted that, although the wage order definition is not entirely synonymous with common law definition of employment, the common law rule "does play an important role." (49 Cal.4th at p. 65.) Moreover, *Martinez* declined to give the wage order definition an overly broad reading. Rather, the Court saw "no reason to refrain from giving the IWC's definition of 'employ' its historical meaning. . . . A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." (*Id.* at p. 69.) Applying the *Martinez* analysis to the minimum wage and overtime compensation claim as stated in this case, the decision counsels a two-step process for determining whether an employment relationship existed: (1) whether a common law employment relationship was present and, if not, (2) whether Farmers exercised control over Shin's wages, hours, or working conditions.

### III. Shin was not an employee of Farmers

The determination of whether a person is an employee or an independent contractor is generally one of fact if it is dependent on the resolution of disputed evidence, but it can be decided as a matter of law if the evidence supports only one credible conclusion. (*Borello*, *supra*, 48 Cal.3d at p. 349; *Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1404.) The trial court found that the evidence submitted in connection with the motion for summary judgment established that Shin was an independent contractor. We agree.

In support of the motion for summary judgment, Farmers introduced evidence that when seeking the district manager position, Shin believed that he would run the district assigned to him as his own business. The documents and agreements signed by Shin in

7

connection with his application and acceptance of the district manager position expressly attested to the fact that the position was one of an independent contractor, not an employee. Although materials of this sort are not dispositive, the fact that the parties believed they were creating an independent contractor relationship, rather than an employer-employee relationship, is relevant to determining independent contractor status under the common law test. (*Borello*, *supra*, 48 Cal.3d at p. 349; *Arnold, supra,* 202 Cal.App.4th 580, 584.)

Further evidence supported the conclusion that Shin had the right to control the manner and means of accomplishing the result desired by Farmers. He incorporated his own separate business, SSIA, in which he invested substantial amounts of his own funds. He found and rented an office for the SSIA business. He hired his own staff and determined how much he and his staff would be paid and what hours they would work. In addition, he paid for computer equipment and services, office supplies, and other business expenses. These facts are all indicative of independent contractor status. (See *Borello*, *supra*, 48 Cal.3d at p. 349; *Arnold*, *supra*, 202 Cal.App.4th 580, 584.)

Unlike cases relied on by Shin, such as *Borello*, in which the petitioners were cucumber-harvesting laborers (48 Cal.3d at p. 345), or *Estrada*, where the plaintiffs were delivery truck drivers and needed no experience or skills other than the ability to drive (154 Cal.App.4th at p. 12), Shin had extensive experience in the insurance sales and marketing field, had previously run and then sold his own Allstate agency, and was licensed to sell insurance in California. Shin's work as a district manager was a high-skill job, a factor weighing in favor of independent contractor status. (See *Arnold*, *supra*, 202 Cal.App.4th 580, 584.) Indeed, the relevant case law overwhelmingly favors the position that parties in positions similar to Shin's are independent contractors. (See, e.g., *id.* at p. 582 [independent insurance agent found to be independent contractor]; *Murray v. Principal Fin. Group, Inc.* (9th Cir. 2010) 613 F.3d 943, 944 ["[w]e, along with virtually every other Circuit to consider similar issues, have held that insurance agents are independent contractors and not employees"].)

8

In opposing the motion for summary judgment, Shin did not directly dispute most the above evidence, and his responsive separate statement generally lacked reference to facts evidencing an employer-employee relationship.[1] On appeal, Shin lists numerous "facts" that did not appear in his separate statement and/or that were struck by the trial court. By failing to properly reference evidence in his responsive statement, we find that Shin forfeited the right to rely on such evidence on appeal. (See Code Civ. Proc., § 437c. subd. (b)(3) [failure to comply with separate statement requirement "may constitute a sufficient ground, in the court's discretion, for granting the motion"]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1266-1267; *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30-31.) Further, Shin relied almost entirely on his own declaration for evidence, and much of it was struck by sustained objections. It is the appellant's "burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error." (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) The appellant must "identify the court's evidentiary ruling as a distinct assignment of error" and provide a separate argument heading and analysis of the issue. (*Ibid.*) Shin has not demonstrated how the evidentiary rulings were incorrect, and thus has forfeited his right to argue that the trial court abused its discretion by excluding evidence. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1075.)

The evidence properly before the court does not demonstrate a triable issue of material fact. Even considering the evidence that Shin relies on in his appeal (most of which he failed to properly refer to in his separate statement), we do not find that it tips the balance in favor of an employment relationship. The facts that he had to attend meetings and trainings, write reports, issue business plans, promote the Farmers brand,

---

[1] As noted above, the responsive separate statement purported to dispute facts without disputing the facts' primary content, it often cited to irrelevant or nonexistent evidence, and citations to the record were overly vague (e.g., citing to "Shin Decl., paragraphs 2-75," or citing to an "Anfanger Declaration" that does not appear in the record).

and maintain his office in a respectable manner are consistent with Farmers' expectation as a contracting party that services would be delivered in an acceptable manner. (See *Mission Ins. Co. v. Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 211, 224 [establishing quality standards is not indicative of an employer-employee relationship; "[o]n the contrary, an employer who controls the manner in which the work is done has little need of establishing quality standards for completed work"].) The fact that SSIA received payment at regular intervals, based at least in part on a percentage of premiums paid on policies sold in his district, also does not evidence an employment relationship. (See *Arnold*, *supra*, 202 Cal.App.4th at p. 589 [independent contractor insurance agent was paid every two weeks, and payment was based on results and not the amount of time spent working].) Nor does the fact that the DMAA could be terminated by either party on 30 days' notice show that he was an employee of Farmers. (*Ibid.*; *Varisco v. Gateway Science & Engineering, Inc.*, *supra*, 166 Cal.App.4th 1099, 1107.) And the fact that he was contractually prohibited from working for other insurance companies during his time as district manager does not require a finding that he was an employee. (See *Murray v. Principal Fin. Group, Inc.*, *supra*, 613 F.3d at p. 944 ["career agent" deemed an independent contractor]; *Mt. Meadow, etc. v. Indus. Acc. Com.* (1938) 25 Cal.App.2d 123, 125 [independent contractor distributor not allowed to handle competing products].)

"Even if one or two . . . individual factors might suggest an employment relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish that [plaintiff] was an independent contractor and not an employee." (*Arnold*, *supra*, 202 Cal.App.4th at p. 590.) Based on the summary judgment papers, the only reasonable conclusion is that Shin was an independent contractor under the common law test.

We also find that there is no triable issue of material fact whether Farmers exercised control over Shin's wages, hours, or working conditions for purposes of his minimum wage and overtime compensation claim. Shin controlled the timing and amount of wages he was paid by SSIA, and he could increase his compensation by recruiting and training successful insurance agents for his district. Farmers did not

10

monitor or supervise the hours Shin worked and did not require Shin to report his hours worked.  Moreover, Shin rented SSIA's office himself, and he supplied the equipment and supplies.

In sum, Farmers did not exercise the sort of control over Shin that is consistent with an employment relationship.  The trial court did not err by finding that Shin was an independent contractor.  Accordingly, summary judgment was properly granted.

## IV. <u>A continuance was not warranted</u>

A trial court's decision to deny a request for a continuance so that a party may seek more evidence to oppose a motion for summary judgment is reviewed for an abuse of discretion.  (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.)  "In exercising its discretion the court may properly consider the extent to which the requesting party's failure to secure the contemplated evidence more seasonably results from a lack of diligence on his part."  (*Ibid.*)

Shin fails to show that the trial court abused its discretion in denying a continuance.  It appears from the record that, after filing the case on October 29, 2010, Shin propounded no discovery for almost an entire year.  Finally, beginning on October 28, 2011, Shin began the process of discovery.  His opposition to the motion for summary judgment was due on November 23, 2011, however, meaning that discovery responses were not even due prior to the deadline for the opposition.  Shin provides no satisfactory excuse for this lack of diligence.  Accordingly, we find no abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.          CHAVEZ, J.

11
