[Civ. No. 8317. Third Dist. Feb. 25, 1954.]

JOHN H. MATTOON, Respondent, v. WILLIAM STEIFF, Appellant.

Robert W. Steel for Appellant.

Manwell & Manwell for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendant to recover the sum of $1,004 alleged to be due from defendant to plaintiff. Defendant filed an answer denying the material allegations of the complaint and also filed a cross-complaint alleging that plaintiff had agreed to do and complete certain work for defendant within a specified time and because of plaintiff's failure to do so defendant had been damaged in the sum of $2,750.

The action was tried by the court without a jury and the court found that defendant rented and hired from the plaintiff a Ford tractor with an operator, at the agreed and reasonable sum of $3.50 an hour for a total of 70½ hours, the total rental earned therefor being $246.75; that defendant similarly rented and hired a TD-14 tractor together with operator at the agreed and reasonable value of $6.50 an hour for 116½ hours, for which defendant became indebted to plaintiff in the sum of $757.25. The court further found defendant was forced to and did expend the reasonable sum of $150 in reworking certain farm lands owned by him for the purpose of making them suitable for his use and that said

defendant should be entitled to a credit against the plaintiff's demands in the said sum of $150; and the court concluded that plaintiff was entitled to judgment against defendant in the sum of $854. Judgment was entered accordingly, and in ruling upon and denying defendant's motion for a new trial the court ordered that the findings of fact and conclusions of law be amended in accordance with section 662 of the Code of Civil Procedure so that instead of finding that defendant had hired certain tractors and operators from plaintiff, the findings be made to read that defendant employed plaintiff to use certain men and equipment and agreed to pay plaintiff therefor the reasonable sum of $3.50 per hour for a Ford tractor and $6.50 per hour for a TD-14 tractor.

Defendant has appealed from the judgment and the substance of his contentions are: (1) That the court's findings are not supported by the evidence which shows, without conflict, that respondent undertook, as an independent contractor, to perform a specific job at the prevailing rate for such work, and that respondent did not complete the performance of his contract and therefore is not entitled to recover the contract price; (2) that the court's finding that appellant had to have some of the work redone shows that respondent did not complete his performance under the contract; and (3) that appellant is entitled to judgment in the sum of $900, appellant having lost his crop by reason of respondent's nonperformance and the amount sought being the pasturage rental value of the acreage in question. Appellant admits that if there was a hiring of equipment or employment of respondent, then appellant (as hirer or employer) would be responsible for the hours consumed and the result of the work. Appellant does not claim that the hourly rates for the equipment were excessive in themselves, but he does complain that the total charge was excessive—that the job required more work hours than it should have, due to respondent's frequent layoffs and the consequent redoing of work.

In reviewing the evidence, all conflicts must be resolved in favor of respondent, and all legitimate and reasonable inferences must be indulged in to uphold the judgment if possible. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. When two or more inferences can be reasonably deduced from the facts, the

reviewing court is without power to substitute its deductions for those of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

According to the record appellant had approximately 30 acres of land which he wanted to plant to clover. The preparation of the land for planting involved disking, landplaning and the construction of checks to contain and channel the irrigation water. Checks are constructed by raising ridges so as to enclose and contain the water within a given area. This work requires special equipment, and at appellant's request respondent furnished equipment and operators to perform the work. Appellant agreed to pay respondent at the rate of $3.50 per hour for work performed with a Ford tractor and equipment, and at the rate of $6.50 per hour for work performed with a TD-14 tractor and equipment. The findings of fact show, and appellant does not deny, that between March 22 and May 18, 1951, the Ford tractor and equipment were used for a total of 70½ hours in performance of the work, and that between March 18 and May 12, 1951, the TD-14 tractor and equipment were used for a total of 116½ hours. The total hours worked and the equipment used are also shown by respondent's testimony.

There was no written agreement covering the performance of the work, and the chief dispute is whether appellant employed respondent to use certain men and equipment in the performance of the work or whether respondent undertook to perform the work as an independent contractor. As is usual in such cases there is a conflict in the evidence as to what was said by the parties when they discussed the work. Respondent testified that he walked through the field with appellant and they reached an agreement there. Appellant testified that the agreement was made during a conversation between them in the Plumas Lake store. Don Chism was present during this conversation. Chism was employed by a company which was to lay a pipe line through the field, apparently for irrigation purposes, and this work could not be done until after certain other work was done in connection with the preparation for planting.

The substance of appellant's testimony regarding the conversation in the store is as follows: Appellant told respondent that he wanted the ground prepared for clover and asked whether respondent had the equipment and would do the work. Respondent replied that he did have the equipment and would do the work, and appellant then asked him if he wanted to do

it by the acre or by the hour, to which respondent replied that it did not make any difference—that it would add up to about the same. Appellant then said that he would rather have the work done at an hourly rate, so that respondent would do a nice job. Appellant told respondent that he wanted the work done as fast as possible so that he could plant before the rains ended, and respondent said that if the weather did not change he could start in a week and go on through with the work. Respondent agreed to notify Chism when the disking and planing were finished, so that the pipe layers could come in and lay the pipe. Chism confirmed the general tenor of the conversation, but admitted, on cross-examination, that he only took part in it "off and on" and that he was interested in the part that had to do with the pipe laying. There is no definite showing, from this conversation, that respondent undertook to perform the work as an independent contractor; it can be as readily inferred that appellant was hiring respondent to perform the work.

Respondent testified that appellant told him that he (appellant) did not want to contract the work because he "wanted the work done right and he didn't want any corners cut." This statement by appellant is sufficient to disprove the independent contractor relationship.

Respondent commenced the work on March 18, 1951. The work did not proceed continuously; there were numerous interruptions, and no work at all was performed during the period between March 27th and April 22d. During these periods of work stoppage, the ground became hard and volunteer grass started to grow. At appellant's request, respondent redid some of the work, such as disking. On one occasion respondent's operator had started to construct the ridges for the checks when appellant stopped him and had him redisk the ground. This, of course, took additional hours. Respondent testified that these delays in the work were due to the wet condition of the ground, but admitted that he might have been a little "slack here" for a couple of days during the layoff from March 27th to April 22d. Appellant testified to the contrary, and introduced in evidence the record showing rainfall in the Marysville area during the period in question. Appellant also testified that respondent's equipment broke down on a number of occasions and that at other times the tractors ran out of gasoline during the progress of the work. There is a clear conflict in the evidence regarding the cause of the interruptions in the work.

Appellant had the land seeded after the checks were in, and then had respondent cultipack the ground, i.e., turn the seed under. This was done about the middle of May and after the spring rains. Although appellant irrigated the land, he did not get a crop. There is considerable evidence that the checks were high in the center and low along the ridges (where dirt was borrowed to form the ridges), so that the land could not be irrigated properly. These high and low areas were apparent to appellant before he commenced the irrigation. Apparently the land had been leveled some years before, but there is no showing that respondent was to do a land leveling job based on surveying data. Respondent admitted that the checks were high in the center, but attributed this to the uneven condition of the ground contours.

After the work was finished, respondent submitted his bill to appellant. Respondent testified that appellant did not express any dissatisfaction with the work, but did complain about the amount of the charge. Appellant did not pay the bill, so respondent brought an action against him for the money due.

From the record it appears that the evidence was highly conflicting, and that both parties and other witnesses testified fully as to the transaction between the parties and as to the manner in which the work was performed. Appellant has made a very able argument in support of his contention that the evidence does not support the findings and judgment, and were we a trial court, instead of an appellate tribunal, it would be very persuasive. But it was for the trial judge who heard the testimony and observed the witnesses to resolve the conflicts in the evidence. Disregarding, as we must, the conflicts in the evidence, we are satisfied that the evidence supports the findings and judgment of the trial court.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J. concurred.