[Civ. No. 5129.   Fourth Dist.   Aug. 24, 1955.]

LEONARD BLAKE, a Minor, etc., Appellant, v. META BLAKE, Respondent.

*Assigned by Chairman of Judicial Council.

Lewis, Signer & Burns and A. A. Goldstone for Appellant.

David W. Hardin for Respondent.

SHELL, J. pro tem.*—Plaintiff, by his guardian *ad litem,* filed an action for annulment or divorce against defendant,. Meta Blake, a minor. Plaintiff in his complaint alleged that there were no minor children of the marriage. In her answer defendant denied that there were no children of the marriage and alleged that William Neale Blake was born as the issue of the marriage. In her cross-complaint for divorce she made a similar allegation as to the said child. She charged the plaintiff with cruelty in general terms. All the pleadings allege and the proof fully establishes that the parties were married on August 29, 1953, and that the date of birth of the child was February 12, 1954. Plaintiff's appeal is from the judgment. He urges insufficiency of the evidence to support certain findings and the judgment of the trial court.

The trial court found:

1. That the parties were married on August 29, 1953.

2. That the parties were father and mother of a child born 9 months and 12 days after the second and last of two acts of sexual intercourse between them prior to their marriage.

3. That the wife made a sincere attempt to "make a go" of the marriage; that the document signed by the wife purporting to be an admission that the minor child was not the husband's child was signed by her under duress used by the husband's mother.

4. That the manner in which the husband attempted to ter-

---

*Assigned by Chairman of Judicial Council.

minate the marriage and the charges he made against the wife constitute ''extreme mental cruelty.''

5. That the wife is a suitable person to have the custody of the minor child.

6. That all of the wife's allegations and denials ·in her answer and her cross-complaint are true.

7. That all the allegations and denials of the husband's complaint and his answer to the wife's cross-complaint inconsistent with the specific findings of fact are untrue.

The appellant urges that there is no substantial evidence to support findings numbers 2, 3, and 4. This contention is directed also to the catch-all findings, numbers 6 and 7.

The average period of gestation is generally taken as 280 days. ■ The trial court found that the birth of this child occurred 282 days after the last act of intercourse between the parties. Computation of the period of gestation as so found by the court results in a finding that ·the date of the last act of intercourse between the parties was approximately May 6th, 1953. We can find no substantial evidence in the record to support this particular portion of finding 2. Respondent testified that there were two occasions of intercourse between her and appellant and that both such occasions were in March, 1953; that two weeks elapsed between the first and second occasion; that she always had her menstrual period near the end of the month; that she missed her menstrual period at the end of April; that at the end of March she had a menstrual flow for one day; that this was after the first occasion of intercourse with appellant; that she had no menstrual flow thereafter; that she had never had sexual intercourse with any man before the first occasion with appellant and that she was 16 years old at the time of that first occasion. We find, therefore, no substantial evidence in the record to support the finding of the court that the last act of intercourse between the parties was on the approximate date of May 6th, 1953. Is there then sufficient evidence to support the finding that the parties were the father and mother of the child William Neale Blake? The trial court may well have found that the last act of intercourse between the parties took place as late as the 12th day of April, 1953. Between that date and February 12, 1954, 306 days, or 10 calendar months and 6 days elapsed.

In the case of *Estate of McNamara*, 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], the Supreme Court of California was considering a period of gestation of 304 days. In that case

the child involved had petitioned the probate court for partial distribution of the estate to him and to accomplish such distribution, it was necessary for him to show that he was in fact the illegitimate son of the decedent. The trial court found in his favor on that issue. The Supreme Court affirmed the finding, and say (p. 90) :

". . . a reading of these same authorities makes it plain that any period in excess of three hundred days is quite exceptional and that with each day over three hundred the exceptional character of the case is much intensified . . ."

And in the same case the Supreme Court made the following observations (pp. 89-90) :

"The first question, while one of fact, is one as to the operation of natural laws, and, therefore, as to a fact of which the court may take judicial notice and as to which it is not confined to the evidence in the record, but may seek information elsewhere and in particular in published technical works and articles by those recognized as authorities in this branch of human knowledge. An examination of recent medical textbooks and articles leaves no doubt as to two points—first, that 304 days is a possible period of gestation and, next, that it is quite an exceptional one. While the average period of gestation is generally taken as 280 days, there are instances vouched for by reputable authorities where the period has exceeded 330 days, and there are instances, too well authenticated apparently to admit of reasonable question, where the period has exceeded 320 days."

The period of gestation in the instant case, if we are to affirm the judgment, must be held to have been possible even though exceptionally longer than the usual or normal period.

The *Estate of McNamara* case serves to illustrate the rule on appeal that in reviewing the evidence all conflicts must be resolved in favor of respondent, and all legitimate and reasonable inferences must be indulged to uphold the judgment if possible. (*Mattoon* v. *Steiff*, 123 Cal.App.2d 512, 513 [266 P.2d 920] ; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

In *Dazey* v. *Dazey*, 50 Cal.App.2d 15 [122 P.2d 308], where an abnormally short period of gestation of 225 days was considered, the trial court applied the conclusive presumption of legitimacy in sustaining without leave to amend a demurrer to a complaint filed by a minor child seeking to determine which of two men was his father. The District Court of

Appeal affirmed the order and petition to the Supreme Court for hearing was denied.

The case of *McGillis* v. *Hofeditz*, 101 Cal.App.2d 760 [226 P.2d 372], cited by appellant, was one in which the trial court found that the child involved was illegitimate and the District Court of Appeal affirmed the judgment, holding that the evidence was sufficient to justify the trial court's conclusion that no sexual intercourse had occurred between the husband and wife for a period of more than a year before the birth of the child.

In the case of *Anderson* v. *Anderson*, 214 Cal. 414, 417 [5 P.2d 881], cited by appellant, the trial court found the child involved to be legitimate, even though born only three and one-half months after marriage of the mother, there being no evidence establishing the fact of sexual intercourse between the mother and the man she married at a time within the normal limits of the period of gestation. The Supreme Court disapproved this finding of the trial court, stating:

". . . we are here not called upon to weigh the probabilities, for we have a case where the fact of prenuptial pregnancy by a stranger is established beyond question, and the presumption of legitimacy no longer obtains."

The Anderson case is the only case cited by counsel in which a finding of the trial court as to legitimacy or illegitimacy was disapproved on appeal, and we believe, in view of the language cited above, is not decisive in the instant case.

We believe that there is no necessity in this case to apply the presumptions established by sections 193, 194 and 195 of the Civil Code nor that declared in subdivision 5, section 1962 of the Code of Civil Procedure. The presumptions therein declared have to do with their application to the admissibility of evidence in cases of disputed legitimacy. In the instant case no question of errors of the trial court in ruling upon the admissibility of evidence is raised on appeal. We must here determine whether there is sufficient evidence in the record to sustain the finding of the trial court to the effect that William Neale Blake is the son of appellant.

We are not unmindful of the fact that in a letter to respondent, dated February 15, 1954, in evidence as defendant's Exhibit "E," appellant added the postscript: "P. S. Take care of my boy"; that in a letter written by him on February 18, 1954, in evidence as defendant's Exhibit "D," appellant said "How is Bill Neal Blake getting along. You be sure and take good care of him"; that in a letter dated February

23, 1954, received in evidence as defendant's Exhibit "F," appellant wrote: "I am now laying here in the compartment thinking of you and the baby"; and "Tell Billy hello for me"; and that in a letter dated February 24, 1954, in evidence as defendant's Exhibit "G," appellant wrote: "How is Billy doing now. I can't wait to see him and you," and "Take care of Billy and yourself." It will be noted that each of these letters was written after the birth of the child.

The respondent admitted that she had intercourse with one Herb Lambert about the middle of May, 1953, but testified that she did not consent to that act; that Lambert forced her to permit the act, and that she had already missed her April menstrual period at the time of that act. She denied any acts of sexual intercourse other than the one with Lambert, and the two acts with appellant.

That part of finding number 2 made by the trial court that the period of gestation was nine months and 12 days is unnecessary to support the judgment of the trial court. The portion of finding number 2 that the parties were the father and mother of the child, William Neale Blake; ". . . that said minor child was born as result of intercourse by plaintiff and defendant prior to the solemnizing of the marriage; that prior to the marriage of said parties they had intercourse on two different occasions" would be sufficient to support the judgment in that respect. Where the evidence is sufficient to sustain the findings necessary to support the judgment, unnecessary findings may be disregarded on appeal. (*Bank of Perris* v. *Sandor,* 24 Cal.App.2d 349, 352 [75 P.2d 87] ; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal.App.2d 129, 154 [80 P.2d 723].) We believe the evidence in this record is sufficient to sustain the whole of finding number 2 except that portion thereof specifically fixing 9 months and 12 days as the duration of the period of gestation.

Finding number 3 seems to us to be an unnecessary finding, but in passing we note that at the time the document was presented to the respondent for signature by appellant's mother, respondent was without independent advice. She was occupied with her small child. Appellant's mother, Theresa Blake, was accompanied by her father, Mr. Piazza, a Mrs. Messer, and by appellant's father, who told respondent they had come to remove appellant's effects. Respondent testified that at that time appellant's mother told her that the document "was to drop the divorce proceeding": that "I was scared and she told me to sign it or else"; and "I was alone

with the baby there''; and that she was fearful for the safety of the baby. This evidence is sufficient to sustain the material portions of finding number three.

Appellant attacks finding number 4 made by the court. We believe that the evidence contained in this record as to the conduct of appellant in his refusal after the marriage to make a Navy allotment in his wife's favor, in refusing to obtain for her a card for treatment of herself and the child at the Naval hospital, she having no means of providing food, care and treatment for herself and child, in causing his parents to remove his clothing and personal effects from the home they had established in a Naval housing unit, in charging her with voluntary sexual intercourse with two other men, in causing other men to telephone to her home, in himself using profanity in the telephonic conversation referred to by respondent and her stepmother, and his participation in coercing respondent to sign the document, are sufficient to justify the trial court in making the material findings of fact contained in finding number four.

The trial court by its general findings numbers 6 and 7 found that the appellant's allegations in his complaint that consent to the marriage was obtained by fraud and that he was under the age of legal consent and did not have the consent of anyone qualified to consent to the marriage, were untrue. These findings are supported by the evidence.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.