Filed 4/6/15  Weaver v. Do CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| KEATE WEAVER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN DO,<br><br>    Defendant and Appellant, | B254248<br><br>(Los Angeles County<br>Super. Ct. No. BS144613) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mel Red Recana, Judge.  Affirmed.

Carol S. Boyk for Plaintiff and Appellant.

Ray & Gourde, Burdick M. Ray and Gabriela Marquez, for Defendant and Appellant.

_____

A patient has the statutory right to a copy of her medical files on request. (Evid. Code, § 1158.) This right is enforceable by a special proceeding for an order to show cause. (Code Civ. Proc., § 1985.7.) The court shall impose monetary sanctions in the amount of the patient's reasonable expenses of enforcement, including attorneys' fees, on a medical professional who fails to comply with his statutory obligation to make the records available, unless the court finds the medical professional acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

Pursuant to this procedure, defendant Jonathan Do, D.D.S. was ordered to provide dental files to his patient, plaintiff Keate Weaver. When he failed to comply with the court's order to do so, he was sanctioned in the amount of $935. In addition, the court made certain factual findings against Dr. Do. Dr. Do appeals. Preliminarily, we reject Weaver's contention that the sanctions order is a nonappealable order. On the merits, we conclude that both the order directing Dr. Do to turn over the documents and the order imposing sanctions were supported by substantial evidence. To the extent Dr. Do challenges additional factual findings which were unnecessary to the court's orders, we need not reach the issue. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Weaver was a dental patient of Dr. Russell Moon from 2001-2011, at his office on the second floor of a building on Arizona Avenue in Santa Monica. In September 2011, Dr. Moon was in a bicycle accident that rendered him quadriplegic. He would never return to the Arizona Avenue office; there was no elevator in the building and it was not wheelchair accessible. In October 2011, Dr. Moon asked Dr. Do to provide dental care for his patients, as he was unable to do so.

---

[1]  In accordance with the substantial evidence standard of review, we set forth the facts in the light most favorable to Weaver, giving her, as prevailing party, the benefit of all reasonable inferences. (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465.)

2

From October 2011 through October 2012, Dr. Do treated Dr. Moon's patients, including Weaver, at the Arizona Avenue office. During this time, Dr. Do had full and complete access to Dr. Moon's patient records. Dr. Do was the only dentist working at Dr. Moon's office. Business and Professions Code section 1683, subdivision (a) requires every dentist who performs service on a patient in a dental office to enter that service in the patient's chart. Dr. Do does not suggest that he did not access, and add to, Weaver's chart when he performed dental services on her.

Weaver first saw Dr. Do in May 2012. She was experiencing difficulty with some dental work Dr. Moon had performed. Dr. Do agreed to remove and replace a bridge Dr. Moon had inserted.

By July 23, 2012, Weaver became disappointed with the quality of Dr. Do's work and his lack of communication. She wrote Dr. Do expressing these concerns. Her letter ended, "I am also requesting a copy of my file, so I can see for myself what has/hasn't been done to my mouth. [¶] Thank you in advance for communicating with me and also for sending me my entire file." Although Dr. Do had a statutory obligation to allow Weaver to inspect her file, and to obtain copies upon payment of a reasonable fee (Health & Saf. Code, § 123110), Dr. Do did not respond to this letter or provide Weaver with a copy of her file.

Dr. Do continued to treat Weaver. Weaver received treatment with Dr. Do on October 7, 2012.

On October 11, 2012, Dr. Moon relocated his office. He severed his relationship with Dr. Do and hired a new dentist to treat his patients at his new office.[2] That same day, Dr. Moon had all of his patient files moved to his new office. The key factual issue

---

[2] Dr. Do would subsequently submit a declaration to the effect that *he* had terminated his professional relationship with Dr. Moon, and that, when he did so, Dr. Moon did not have a dentist to replace him. This was contradicted by Dr. Moon's declaration that, on October 11, 2012, he "severed [his] relationship with Dr. Do and hired a new dentist to treat [his] patients at [his] new office." Resolution of this factual dispute was, of course, a matter for the trial judge. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

3

in this case is whether Dr. Moon moved Weaver's file to his new office or if, to the contrary, Dr. Do retained possession of the file.

On October 19, 2012, Dr. Do wrote Weaver, terminating his dentist-patient relationship with her, and transmitting a partial refund.[3]  In his three-page, single-spaced letter, Dr. Do set forth the details of work he had performed on several of Weaver's teeth, a fact that gives rise to the inference that Dr. Do had Weaver's file in his possession as he was writing the letter.  As Dr. Do considered the dentist-patient relationship terminated, he advised Weaver to obtain another dentist.  He informed Weaver that she could receive a copy of her chart with a written request, and a copy of her dental x-rays with a written request and small fee.  Dr. Do closed his letter by stating that he had moved out of the Arizona Avenue office and was looking for another location.[4]  Significantly, Dr. Do did not suggest that he believed Dr. Moon remained in charge of Weaver's dental treatment and records.  Dr. Do's suggestion that Weaver seek another dentist strongly implies that Dr. Do believed that he was Weaver's *only* dentist, and that, as he was terminating her as a patient, Weaver had no dentist at all.

By letter dated July 24, 2013, Weaver requested her chart and x-rays from Dr. Do. She referenced Dr. Do's letter of October 19, 2012.  Dr. Do did not respond to this letter.

Weaver retained counsel in contemplation of bringing a dental malpractice action against Dr. Do.  She signed an authorization directing Dr. Do to disclose her dental files to her attorney, David Aiso.  On August 9, 2013, Attorney Aiso wrote Dr. Do, enclosing

---

[3]  Dr. Do did not terminate the relationship on his own accord.  He took the position that Weaver had terminated the relationship "[b]y saying that [she did] not want a 'crook' to work on" her.

[4]  Dr. Do would take the position in this litigation that when he offered to copy Weaver's medical records, he did so only as a favor to Dr. Moon, because Dr. Moon had no dental associate when Dr. Do left, and Dr. Do believed he could help Weaver obtain her records from Dr. Moon.  In addition to being contradicted by Dr. Moon's testimony, Dr. Do's position is undermined by the language of his letter itself.  The letter does not state that Dr. Moon had Weaver's chart and that Dr. Do would help her obtain it from him.  Instead, it states that Weaver could obtain her chart and x-rays from Dr. Do if she sent *him* a written request and paid *him* the necessary fees.

the medical authorization, and seeking Weaver's file, under Evidence Code section 1158.**5**

For the first time, Dr. Do responded to a request for Weaver's file. He telephoned Attorney Aiso, stating that Weaver's records were probably in storage, and that he could look for them. On August 21, 2013, however, Dr. Do telephoned Attorney Aiso again, stating that he did not have Weaver's records and x-rays. He stated that he had checked the storage facility, and could find neither Weaver's records nor x-rays. He took the position that Dr. Moon had Weaver's file. Dr. Moon, however, had told Attorney Aiso that Dr. Do had taken Weaver's file when he had left Dr. Moon's practice. As each dentist was claiming that the other had Weaver's files, Attorney Aiso wrote them both, suggesting that they speak to each other and sort out the matter. Attorney Aiso received no further response.

Code of Civil Procedure section 1985.7 provides that when a medical provider fails to comply with Evidence Code section 1158, the patient "may apply to the court for an order to show cause [OSC] why the records should not be produced." On August 30, 2013, Weaver filed such a petition, naming both Dr. Moon and Dr. Do as defendants. Pursuant to statute, Weaver sought the reasonable expenses of obtaining an order compelling production, including attorneys' fees.

A hearing was set on September 27, 2013. Dr. Moon and Dr. Do were ordered to show cause why the dental records and x-rays should not be produced. Dr. Moon and Dr. Do were also given notice that Weaver sought sanctions in the amount of $935 as the reasonable expenses incurred in compelling production.

In response to the OSC, Dr. Do filed a declaration stating that he had made a diligent and reasonable search to find Weaver's records and x-rays, and such records were not in his custody and control. Thereafter, apparently for first time, Dr. Do

---

**5** There are two statutory provisions granting patients the right to copies of their medical files: Health and Safety Code section 123110 and Evidence Code section 1158. The former grants patients the right to inspect and copy their files; the latter grants patients' attorneys the right to inspect and copy their files in contemplation of litigation. (*Maher v. County of Alameda* (2014) 223 Cal.App.4th 1340, 1353.)

searched *his house* for Weaver's records. Although he did not find Weaver's records, he found dental records for 58 other patients of Dr. Moon, which he then turned over to Dr. Moon.

At the hearing on the OSC, the trial court sought additional declarations from the parties. Weaver, Dr. Do, and Dr. Moon all submitted additional declarations in response.

On November 12, 2013, having considered the moving papers and all declarations, the trial court issued its ruling ordering Dr. Do to produce Weaver's records and x-rays. Reviewing all of the evidence, the court concluded that Dr. Do had Weaver's chart and x-rays in his possession on October 19, 2012, when he told Weaver she could obtain those documents with a written request. The court also found it significant that Dr. Do only recently discovered nearly 60 dental charts of Dr. Moon's patients in his home, and Dr. Do had never obtained Dr. Moon's permission to take those files. In contrast, the court believed Dr. Moon had no custody or control over Weaver's files from October 2011 onward.

The court set a second OSC for November 25, 2013. The court appears to have set the matter for a hearing on compliance with its November 12, 2013 order. In other words, the second OSC required Dr. Do to comply with the court's first order, or show cause why he should not be sanctioned for failing to do so.

Dr. Do again failed to turn over Weaver's records. He submitted another declaration in response to the OSC. Dr. Do's declaration was, in effect, a motion for reconsideration of the court's prior order. Dr. Do provided additional details on his and Dr. Moon's chart-handling practices, in an effort to establish that Dr. Moon (or someone acting under his direction) had taken Weaver's chart from the Arizona Avenue office.

A hearing was held, as scheduled, on November 25, 2013.[6] Weaver was directed to prepare a proposed order. On December 3, 2013, the court signed and filed the proposed order. In its order, the court made the following findings: (1) Dr. Do has

---

[6] Dr. Do has not designated for inclusion in the record on appeal the minute order for that date, nor any reporter's transcript or settled statement of the proceedings.

6

Weaver's chart and x-rays and refuses to turn them over, despite court order; (2) Dr. Do has failed to provide sufficient reason and evidence excusing him from producing the chart and x-rays; (3) the chart and x-rays are the property of Weaver; (4) as Weaver intends to file a dental malpractice action against Dr. Do, she will "sustain substantial prejudice" by Dr. Do's refusal to turn over her chart and x-rays; and (5) if Weaver files the dental malpractice action, probable cause exists for her to bring such an action against Dr. Do and any other party responsible for injuries she sustained while undergoing treatment with Dr. Do. Dr. Do was ordered to pay $935 in attorneys' fees and costs to Weaver.

A status conference was held on January 30, 2014. At the status conference, counsel for both parties learned, for the first time, that the trial court had signed its order on December 3, 2013. Dr. Do's counsel asked if the court's order constituted a final disposition of Weaver's initial petition such that the proceedings on the petition were concluded in the trial court; the court agreed.

On February 4, 2014, Dr. Do filed a notice of appeal.

## DISCUSSION

Preliminarily, we consider, and reject, Weaver's contention that Dr. Do is attempting to appeal from a nonappealable order. On the merits of the appeal, Dr. Do argues that Weaver's files were not in his custody or control, both as a matter of law and as a matter of fact. We reject both arguments. We also reject Dr. Do's argument that the statutory predicate for an award of monetary sanctions was not supported by the evidence. To the extent Dr. Do challenges the court's additional findings, those findings are unnecessary to the issues before us, and we therefore disregard them.

1.      *The Order is Appealable*

"An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.)

7

"Every other remedy is a special proceeding." (Code Civ. Proc., § 23.) A final judgment in a civil action is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) Similarly, "unless the statute creating the special proceeding prohibits an appeal, there is an appeal from a final judgment entered in a special proceeding." (*Knoll v. Davidson* (1974) 12 Cal.3d 335, 343.) In this case, we are concerned with a special proceeding under Code of Civil Procedure section 1985.7, which allows a party, outside of any medical malpractice action, to obtain an OSC as to why a medical provider has not turned over medical records in accordance with the duty imposed by Evidence Code section 1158. The statute contains no limitation on appealability. If a final judgment was entered in this case, that judgment is appealable.

" ' " 'There can be but one final judgment in an action, and that is one which in effect ends the suit in the court in which it is entered, and finally determines the rights of the parties in relation to the matter in controversy' [citations]. A judgment is final 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citation.]" (*San Joaquin County Dept. of Child Support Services v. Winn* (2008) 163 Cal.App.4th 296, 300.) This test is satisfied. The OSC was obtained; the trial court issued an order to turn over the documents; and a second order was entered when the court concluded that Dr. Do had not complied with its first order. The litigation was completed and there was nothing left for the trial court to resolve. The court's final order thus constitutes an appealable final judgment.

Weaver argues that the order is not appealable because further related proceedings are pending between the parties. Specifically, Weaver has brought suit against Dr. Do for dental malpractice and conversion of her medical records.[7] The action was apparently filed on January 6, 2014, *after* the trial court entered its final order in the current action,

---

[7] Both parties refer to the pending dental malpractice action. However, neither party has sought judicial notice of the action, and the pleadings in that action are not properly before this court.

8

although before the parties were made aware that the order had been entered. Weaver's suggestion that her filing of the dental malpractice action somehow renders nonfinal and nonappealable an order which was final and appealable when it was entered is unsupported by law or logic. Had the dental malpractice action been consolidated with the record disclosure enforcement proceeding, Weaver's argument might have merit. However, the dental malpractice action is an entirely different proceeding; it is not a special proceeding and instead is a regular civil action with a distinct case number. As such, the dental malpractice action has no effect on the finality of the order in this case.[8]

2.      *Substantial Evidence Supports the Trial Court's Lawful Finding that the Records Were in Dr. Do's Custody or Control*

Dr. Do challenges the trial court's finding that Weaver's files were in his custody or control on two bases: first, that the court was not empowered to make this finding; and second, that the court's finding was not supported by the evidence. We reject both arguments.

Evidence Code section 1158 permits a patient's attorney to inspect and copy all of the patient's records under the "custody or control" of a medical provider. Dr. Do argues that Evidence Code section 1158, and its companion enforcement provision, Code of Civil Procedure section 1985.7, do not permit the trial court to make a factual determination that the patient's records are in the custody or control of any particular provider. Dr. Do takes the position that Evidence Code section 1158 applies only when it is either undisputed that the medical provider possesses the records or when, as a matter of law, the medical provider has the *legal right* to possess the records. He then argues that Dr. Moon, not Dr. Do, had the legal right to possess Weaver's medical records. We disagree. While the relative right of different medical providers to *control* a patient's medical records may be a matter of legal dispute, the issue of *custody* is a factual one. Either Dr. Do had actual or constructive custody of Weaver's medical records, or he did

---

[8]      As we conclude that the order was appealable, we deny Weaver's motion for sanctions for an appeal taken from a nonappealable order.

9

not. This is a factual issue that a trial court can and should resolve, if disputed, in proceedings under Code of Civil Procedure section 1985.7.[9]

We turn to the factual issue. We review a trial court's determination of historical or physical facts under the substantial evidence test. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384.) The trial court's finding that Dr. Do had custody of Weaver's records is well supported by substantial evidence.[10] The declarations and exhibits before the court were sufficient to support the following view of events. After Dr. Moon's injury, Dr. Do took over his practice. He treated Weaver repeatedly, and had custody of her chart. He last saw Weaver on October 7, 2012. On October 11, 2012, Dr. Moon severed his relationship with Dr. Do, hired a new dentist to take his place, and moved to a new office. Dr. Moon had his patient files moved to the new office. Weaver's file was not among the files moved; Dr. Do believed that he, not Dr. Moon, was Weaver's dentist after the Dr. Moon/Dr. Do relationship had been severed. The court reasonably could have found that Dr. Do kept Weaver's records. On October 19, 2012, Dr. Do terminated the dentist-patient relationship with Weaver, and advised her to get a new dentist. He informed her that she could obtain her chart *from him* at this time. As such, the evidence supported the finding that Dr. Do had custody of Weaver's file on October 19, 2012, and the finding that he continued to possess it.

---

[9]    Dr. Do's argument that Code of Civil Procedure section 1985.7 does not apply unless the medical provider concedes that he has possession of the records would wholly gut the statute. If the trial court believes that the patient has not established that the medical provider possesses the records in a Code of Civil Procedure section 1985.7 OSC proceeding, the court is free to refuse to issue the order without prejudice to further litigation.

[10]    At oral argument, Dr. Do suggested that *if* the trial court were empowered to make a factual finding regarding custody of the records, the trial court could do so only after full discovery and oral testimony. Dr. Do did not request discovery or testimony at either of the two OSC hearings before the trial court, nor did he make this argument in his briefing on appeal. We therefore consider the argument waived. (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356-357, fn. 6.)

### 3. *Monetary Sanctions Were Supported by the Evidence*

To the extent that Dr. Do challenges as unsupported by the evidence the trial court's conclusion that monetary sanctions were appropriate, we reject the contention. Code of Civil Procedure section 1985.7 provides that monetary sanctions shall be imposed unless the court finds that the person subject to sanction "acted with substantial justification or that other circumstances make the imposition of the sanction unjust." The evidence on this issue was sufficient to support the following view of events. Weaver requested a copy of her file, in writing, from Dr. Do in July 2012, when he indisputably had access to it. Although Dr. Do had a statutory duty to comply with this request, he ignored it (and, instead, three months later, told Weaver that she could obtain a copy of her file by written request). The following year, Weaver requested a copy of her file, in writing. Again, Dr. Do ignored her request. When Weaver's attorney requested the file, Dr. Do, for the first time, searched his storage facility for the file. It was only when the court issued an OSC that Dr. Do could be bothered to search his house for the file, where he then discovered nearly 60 patient files he had improperly kept from Dr. Moon for over a year. This course of events gives rise to an inference that Dr. Do repeatedly ignored requests of patients (and Dr. Moon) for their files, and failed to properly search for such files until faced with actual court proceedings. Dr. Do did not have substantial justification for not complying with Attorney Aiso's request, and no other circumstances rendered the imposition of monetary sanctions unjust. Under the circumstances, the court did not abuse its discretion in awarding the monetary sanctions. (See *Conservatorship of G.H.* (2014) 227 Cal.App.4th 1435, 1440 [abuse of discretion review applies to discovery sanctions].)

### 4. *We Decline to Consider Dr. Do's Challenge to the Court's Remaining Findings*

In its December 3, 2013 order, the trial court made additional findings that were adverse to Dr. Do. Dr. Do challenges these findings as outside the court's authority in a Code of Civil Procedure section 1985.7 proceeding and unsupported by the evidence. Dr.

11

Do argues that the findings are prejudicial to him to the extent they may be given preclusive effect in Weaver's dental malpractice action.

We do not construe the court's additional findings as sanctions. There is some confusion in the record on this point, in that Weaver's notice of ruling after the second OSC hearing indicates that the court "instructed plaintiff's counsel to suggest an appropriate evidentiary sanction in light of Dr. Do's continued refusal to turn over the dental chart and x-rays . . . ." However, the notice of ruling does not indicate that the court accepted any such suggestion and imposed evidentiary sanctions. Moreover, the order subsequently signed by the court at no point indicates that the court's findings are to be considered as evidentiary sanctions, nor does the court's order impose any sanctions at all beyond the $935 in costs and attorneys' fees.

The determination of the collateral estoppel effect of any findings made by the trial court in this action is a matter to be determined, in the first instance, by the trial court in the subsequent litigation. We express no opinion on the matter; nor do we express any opinion on whether any factual findings, unnecessary to the trial court's order, are supported by substantial evidence. (*Blake v. Blake* (1955) 135 Cal.App.2d 218 [findings unnecessary to support the judgment may be disregarded on appeal].)

## DISPOSITION

The order is affirmed. Weaver shall recover costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

12