Filed 10/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DARNICE LINTON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DESOTO CAB COMPANY, INC.,<br><br>    Defendant and Appellant. | A146162<br><br>(San Francisco County<br>Super. Ct. No. CGC-14-540040) |

Plaintiff Darnice Linton appeals from a judgment in favor of defendant DeSoto Cab Company.  Defendant initiated the trial court proceeding after the Labor Commissioner found in favor of plaintiff on his claim for unpaid wages.  Plaintiff had alleged defendant violated certain wage and hour laws by requiring him to pay a set fee (known as a "gate fee") in exchange for obtaining a taxicab to drive for each of his shifts.  After a bench trial, the court concluded plaintiff was not entitled to recover the gate fees because he was an independent contractor and not an employee of defendant.  In so ruling, the court determined that several relevant cases, including the Supreme Court's seminal case *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*), are not controlling under the circumstances at issue here.  We conclude the court erred in its legal analysis.  The judgment is therefore reversed.  Our conclusion renders moot defendant's appeal of the court's order denying its claim for costs.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

## I.  *Background*

Defendant has a fleet of about 230 taxicabs in San Francisco.  Plaintiff drove its taxicabs from September 2008 to August 2012.  Plaintiff initiated the relationship with defendant by filling out an Application for Lease.  The application requested his social security number.  He was required to show he was eligible to work in the United States.  He also had to bring in his driver's license, a DMV printout, and his "A" card, which is currently issued by the San Francisco Municipal Transportation Agency (SFMTA).  An "A" card allows individuals to drive a taxicab in San Francisco.  Subsequently, he was retained by Greg Cochran, defendant's operations manager.

On September 5, 2008, plaintiff signed a 15-page Taxicab Lease Agreement (Agreement) that was drafted by defendant.  The content on the form is preprinted, and plaintiff did not negotiate any of its terms.  The Agreement includes language disclaiming any employment relationship between the parties.  Either party could cancel with 30 days' notice, or without notice in the event of a breach.  After the Agreement was executed, plaintiff gave defendant's cashier a security deposit of $500.  He also attended an orientation that lasted about three hours, during which Cochran explained the company's procedures, including advice on how drivers should treat their customers.  Cochran testified that defendant could not operate as a business without the taxicab drivers who lease and drive its cabs.

In order to begin a shift, taxi drivers check in with the cashier and are assigned a cab.  Drivers receive the cab's keys, a taxi medallion, and a "waybill."  The bottom of each waybill states:  "DRIVE CAREFULLY.  DRESS NEATLY.  BE COURTEOUS."  At the end of a driver's shift, he or she returns the cab, the medallion, and the waybill, and pays the cashier the gate fee for the leasing of the vehicle.  Drivers keep the fares and tips that they receive from their passengers, and they are not required to account to defendant for their fares.  Defendant's only income under the Agreement is the gate fee.

Plaintiff initially was given day shifts from 3:00 a.m. to 1:00 p.m., Monday through Friday. He was required to lease the cab for 10 hours each shift. He would drive different vehicles, depending on availability. The gate fee was about $100 per day. Plaintiff also would often tip dispatchers and cashiers when he picked up and dropped off the cab. He did not believe he had the ability to negotiate the gate fee, which was set by defendant. His goal was to take home at least $200 per shift after the gate fee and gas. About three or four times a year he would lose money on a shift, or just break even. Sometimes defendant asked him to return a cab before his shift ended. This happened on about six or seven occasions.

When plaintiff was working, defendant's dispatch would relay requests from customers and radio the customers' locations. Plaintiff and other drivers could then respond with their locations. Dispatch would assign the closest driver to pick up the customer. Plaintiff was free to reject or accept dispatch calls. Defendant does not control how much money drivers make during their shifts. It does not require drivers to check in during their shifts or report when they take breaks. However, defendant's cabs are equipped with GPS tracking. The cabs also have audio and video recording devices that are mounted on the windshield and record video inside and outside of the cab.

About 60 percent of plaintiff's fares came from customer street hails. Dispatch radio calls accounted for around 35 to 40 percent of his fares, with about 2 percent coming via his personal cell phone. About once or twice a month, defendant asked him to accept a discounted fare, such as when he would transport a blood specimen from Blood Centers of the Pacific to a hospital. Defendant had a contract with the blood bank for this purpose. Drivers were paid a flat rate to transport blood specimens. Plaintiff did not set the flat rate.

After plaintiff was involved in an accident in October 2011, he received a warning letter from defendant's general manager. He was told that if he had another accident the lease agreement could be cancelled. He received a notice of termination on August 18,

2012, shortly after he was accused of obtaining a passenger's credit card information and making repeated charges on her account.

## II.     *The Labor Commissioner's Order*

On August 5, 2013, plaintiff filed a claim with the Labor Commissioner's office contending that he had been misclassified as an independent contractor instead of as an employee.  The claim alleged plaintiff was owed:  (1) Wages for the period from August 5, 2010 to August 15, 2012, in the amount of $65,445, (2) wages for the period from August 15 to September 14, 2012, in the amount of $2,583, (3) overtime wages earned from August 2010 to August 2012, at $7,632 per year, and waiting time penalties pursuant to Labor Code sections 201 and 203,[1] at the daily rate of $215.32.

On June 2, 2014, the Labor Commissioner issued an order holding that plaintiff was an employee and assessing wages, interest, and waiting time penalties against defendant under sections 221, 98.1, subd. (c), and 203.  Defendant was ordered to reimburse plaintiff for gate fees paid from August 2010 to August 2012, in the amount of $50,180.[2]  Plaintiff was also awarded $9,018 in interest on this amount and $6,459 in penalties for nonpayment of wages.

In its findings of fact, the Labor Commissioner found that plaintiff had exercised complete discretion in the manner in which he operated the taxicabs.  However, the Labor Commissioner concluded plaintiff had provided services to defendant as an employee, based on the factors set forth in *Borello*, *supra*, 48 Cal.3d 341, as well as our opinion in *Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288 (*Yellow Cab*).

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] The Labor Commissioner dismissed plaintiff's overtime wage claim.

4

On June 18, 2014, defendant filed a notice of appeal of the Labor Commissioner's decision pursuant to section 98.2. That section provides for a de novo proceeding in the superior court. (§ 98.2, subd. (a).)

### III. Proceedings at Trial

Plaintiff's claims are based on sections 201,[3] 203,[4] and 221.[5] These statutes are found in Division 2 of the Labor Code (§ 200 et seq.), entitled "Employment Regulation and Supervision."[6] A bifurcated court trial was held to first address the issue of whether plaintiff was an employee of defendant or an independent contractor. In its trial brief, defendant argued that plaintiff was never an employee, but was instead a lessee whose remedies were limited to the remedies provided for under the leasing provisions of California's Commercial Code at section 10501 et seq. After the close of evidence and concluding arguments, the trial court orally issued a tentative ruling against plaintiff, finding he was not defendant's employee.

### IV. The Statement of Decision

On May 5, 2015, plaintiff submitted a request for a statement of decision including a total of 64 separate issues to be addressed.

---

[3] Under section 201, if an employee is discharged, "the wages earned and unpaid at the time of discharge are due and payable immediately." (§ 201, subd. (a).)

[4] Section 203 provides for the assessment against an employer for failure to pay wages as required by law. It provides, in part: "If an employer willfully fails to pay . . . in accordance with Section[] 201 . . . any wages of an employee who is discharged . . ., the wages of the employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced . . . ."

[5] Section 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

[6] During trial, plaintiff raised a theory under section 2802 for reimbursement of his business expenses. The trial court did not expressly rule on this claim, but concluded it would be governed by the same legal principles as plaintiff's other statutory claims. (See our decision in *Arnold v. Mutual of Omaha Ins. Co.* (2011) 202 Cal.App.4th 580, 587 (*Arnold*) [common law test of employment applies to section 2802].)

5

On May 29, 2015, the trial court executed and filed a 34-page proposed statement of decision prepared by defendant.

On June 10, 2015, plaintiff filed a 32-page pleading containing 99 objections to alleged "omissions and ambiguities" contained in the proposed statement of decision.

On June 24, 2015, plaintiff submitted further objections to defendant's statement of decision.

On June 26, 2015, the trial court issued a revised 39-page statement of decision. In its ruling, it concluded that *Borello* and its taxicab-related progeny *Yellow Cab* and *Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd.* (1991) 235 Cal.App.3d 1363 (*Santa Cruz*) are not controlling, rationalizing that these cases were distinguishable because plaintiff's claims do not concern worker's compensation or unemployment insurance benefits.

On July 13, 2015, the trial court filed its judgment. The court declined to award defendant costs, citing to section 98.2 and Code of Civil Procedure section 1032, subdivision (d).

On August 31, 2015, plaintiff filed an appeal from the judgment.

On September 28, 2015, defendant filed an appeal from the portion of the judgment denying it costs.

## DISCUSSION

### I.      *Standard of Review*

A trial court's findings and judgment "must be sustained if they are supported by substantial evidence, even though the evidence could also have justified contrary findings." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) However, "when the trial court's order involves the interpretation and application of a constitutional provision, statute, or case law, questions of law are raised and those questions of law are subject to de novo (i.e., independent) review on appeal. [Citation.]

6

It is an abuse of discretion for a trial court to misinterpret or misapply the law."
(*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1333–1334.)

## II.     *The Trial Court Erred in Failing to Adhere to* **Borello**

As noted above, in its statement of decision the trial court explicitly concluded that *Borello, Yellow Cab,* and *Santa Cruz* are not controlling because they involved worker compensation and unemployment insurance claims instead of wage claims. We believe reliance on that distinction did not negate the relevance of these decisions in this case. The trial court's conclusion was error.

### A. Governing Principles

The seminal case regarding the difference between employment and independent contractor relationships in California is *Borello, supra,* 48 Cal.3d 341. In the context of workers' compensation laws, our high court set out the basic principles that govern such disputes. (*Borello,* at p. 349.)

The court in *Borello* first observed that the common law on vicarious liability distinguishes between employees and independent contractors based on an assessment of the extent to which the hirer had a right to control the details of the service provided. (*Borello, supra,* 48 Cal.3d at p. 350.) The court reasoned that "the concept of 'employment' embodied in the [Workers Compensation Act] is not inherently limited by common law principles." (*Borello,* at p. 351.) This is because "[t]he common law and statutory purposes of the distinction between 'employees' and 'independent contractors' are substantially different." The "common law tests were developed to define an employer's liability for injuries caused *by* his employee . . . ." (*Id*. at p. 352.) In determining whether the employer should be vicariously liable for acts of a person it hired, the extent to which it had the right to control the activities performed by that individual was " 'highly relevant.' " (*Id*. at p. 350.) But " 'the basic inquiry in compensation law' " is different. There, the question is " 'which injuries *to* the employee should be insured against by the employer.' " (*Id.* at p. 352.)

7

In cases involving workers' compensation and other protective, remedial legislation, courts have declined to apply the control test "rigidly" or "in isolation." (*Borello, supra,* 48 Cal.3d at p. 350.) Instead, "the 'control-of-work-details' test for determining whether a person rendering service to another is an 'employee' or an excluded 'independent contractor' *must be applied with deference to the purposes of the protective legislation.* The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute." (*Id.* at pp. 353–354, italics added.) Here, the goal of both workers' compensation law and the Labor Code's wage and hour provisions is to protect a class of workers who otherwise would not enjoy statutory protections. Accordingly, we conclude the principles annunciated in *Borello* apply to this case.

In addition to the control analysis, the *Borello* court endorsed various " 'secondary' indicia of the nature of a service relationship" that, in addition to the issue of control, may be considered. (*Borello*, *supra*, 48 Cal.3d at pp. 350–351.) "Thus, we have noted that '[s]trong evidence in support of an employment relationship is the right to discharge at will, without cause. [Citations.]' [Citations.] Additional factors have been derived principally from the Restatement Second of Agency (Restatement). These include (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are

8

creating the relationship of employer-employee."[7]  Additionally, these " 'individuals factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' " (*Borello,* at pp. 350–351; see *Arnold*, *supra*, 202 Cal.App.4th at p. 584.)

In *Yellow Cab,* we held that a taxi driver who leased his taxi from a San Francisco taxi company was an employee, not an independent contractor, for the purpose of workers' compensation law.  After discussing *Borello,* we determined the taxi company exercised a sufficient level of control over its drivers to conclude that the drivers were employees.  While the lease agreement between the driver and the company, like the Agreement at issue here, stated that the driver was self-employed, we found that to be nondispositive because the parties' actions determine the relationship, not the labels they use.  (*Yellow Cab*, *supra*, 226 Cal.App.3d at p. 1297.)  In that case, the evidence showed drivers were trained on how to conduct themselves, including adherence to rules of good driving behavior.  Similar to the arguments advanced by defendant below, the company stressed that its drivers possessed a large degree of independence, with freedom to not take radio calls, or to use the cab to carry family members rather than paying passengers.  We found such freedoms were inherent in the nature of the work, because economic reality dictated that a cab driver would need to carry paying passengers during the lease timeframe.  In addition, the company exercised control over the drivers by prohibiting them from driving for other companies, and possessed the ability to terminate leases based on write-ups or customer complaints.  We noted:  "Liability to discharge for disobedience or misconduct is strong evidence of control."  (*Id.* at p. 1298.)  We also

---

[7] The *Borello* court also noted several additional factors developed by other jurisdictions that are derived from the Fair Labor Standards Act.  (*Borello, supra,* 48 Cal.3d at pp. 354–355.)  As the law currently stands, it is unclear whether these additional factors are to apply in the wage context.  (See *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 532, fn. 3 (*Ayala*).)

rejected the argument that the reversed " 'flow of payment' " was determinative, calling it "at most an equivocal consideration." (*Id*. at p. 1300.)

Likewise, the appellate court in *Santa Cruz* applied both common law rules and Restatement factors to analyze whether there was substantial evidence to support a finding of independent contractor status of a taxi driver/benefits claimant. (*Santa Cruz*, *supra*, 235 Cal.App.3d at pp. 1371–1372.) There, the issue was whether the plaintiff was entitled to unemployment/disability benefits as an "employee." The appellate court first considered the common law test for " 'right to control the means by which the work is accomplished' " (*id*. at p. 1371) and then proceeded to the secondary Restatement factors as laid out in *Borello* in concluding the taxi driver was an employee for purposes of obtaining disability benefits. In the course of its opinion, the court observed that "Yellow Cab is not merely in the business of leasing taxicabs and collecting rent akin to Hertz Rent-A-Car and like enterprises. It owns the taxicabs and municipal taxicab license; customers call it for taxicab service, and it arranges for performance of the service; and the taxicabs bore Yellow Cab's identity." (*Santa Cruz*, at p. 1376.) These observations can also be applied to the instant case.

### *B. The Trial Misconstrued* Ayala

Here, as evidenced by the statement of decision, the trial court failed to properly apply the *Borello* analysis in finding plaintiff provided services as an independent contractor. The court apparently determined *Borello, Yellow Cab* and *Santa Cruz* were limited to the workers' compensation and unemployment insurance context. The trial court instead concluded that the "common law" test set forth in *Ayala*, *supra*, 59 Cal.4th at p. 531 applied to this dispute because the division of the Labor Code that contains sections 201, 203, and 221 does not provide a statutory definition of "employee." Contrary to the trial court's understanding, *Ayala* did not disavow *Borello*. Both *Borello* and *Ayala* set forth a unified analysis with respect to whether a worker should be classified as an employee or independent contractor.

10

In *Ayala,* the Supreme Court revisited the common law definition of an employee relationship in evaluating whether a class could be certified in a wage and hour action alleging the defendant had misclassified its employees as independent contractors. The trial court had denied the plaintiffs' motion to certify the putative class of newspaper carriers hired by the Antelope Valley Press to deliver its newspaper after finding common issues did not predominate. (*Ayala, supra,* 59 Cal.4th at p. 529.) The trial court reasoned *Borello*'s common law test for an employment relationship would require " 'heavily individualized inquiries' " into the newspaper's control over the carriers' work. (*Ayala,* at p. 529.) Because the plaintiffs had proceeded under the common law definition, the Supreme Court limited its discussion to whether the plaintiffs' claims were susceptible to proof on a classwide basis under that test. (*Id.* at pp. 530–531.) *Ayala* concluded the trial court should have focused on the "differences in [the defendant's] right to exercise control," rather than "variations in how that right was exercised" (*Ayala*, at p. 528) when it concluded individual issues predominated. "What matters is whether the hirer 'retains all *necessary* control' over its operations." (*Id.* at p.531, quoting *Borello*, *supra*, 48 Cal.3d at p. 357.) The Supreme Court then affirmed the Court of Appeal's judgment, overturning the trial court's order and remanding the case for reconsideration of the motion under the correct legal standards. (*Id.* at p. 540.)

In a footnote responding to a concurring justice's concerns about the application of the "common law" test,[8] the majority of the court stated: "As Justice Chin's concurrence notes, *Borello* recognized 'the concept of "employment" embodied in the [Workers' Compensation] Act is not inherently limited by common law principles' [citation] and

---

[8] The *Ayala* court's reference to the "common law" did not necessarily exclude *Borello*'s principles: "[W]e glean that our Supreme Court's and other courts' applications of both primary and secondary criteria of employment determinations are in the process of becoming part of the common law of this state . . . ." (*Messenger Courier Assn. of Americas v. California Unemployment Ins. Appeals Bd.* (2009) 175 Cal.App.4th 1074, 1091.)

11

identified a handful of other considerations that might 'overlap those pertinent under the common law' [citation]. Strictly speaking, however, those further considerations are not part of the common law test for employee status. The concurrence's assertion they are relevant here [citation] *rests on the legal assumption they play a role in deciding employee status for wage claims, an assumption we decline to embrace,* leaving for another day resolution of its validity."[9] (*Ayala, supra,* 59 Cal.4th at p. 532, fn. 3, italics added.) A close reading of *Ayala* suggests this conclusion pertains to the additional factors noted by *Borello* that are derived from the FLSA, and not to the secondary factors derived from the Restatement of Agency.[10]

Given the discussion in *Ayala*, there can be no doubt that *Borello* sets forth the common law test now applicable in our courts, and that the test involves a multipurpose inquiry that looks not only at the right to control work details, but also at additional secondary factors derived from the Restatement of Agency. (See, e.g., *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1347–1348 (*Ali*); *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10–11 (*Estrada*); *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 85–87 (*Cristler*).) *Borello* arose in the context of workers' compensation, and both *Yellow Cab, supra*, 226 Cal.App.3d 1288 and *Santa Cruz, supra*, 235 Cal.App.3d 1363 dealt with unemployment and disability insurance coverage for workers. However, the cases of *Ali*, *Estrada*, and *Cristler* are among the

---

[9] In *Dynamex Operations West, Inc. v. Superior Court* (review granted Jan. 28, 2015, S222732), the issue on review is: "In a wage and hour class action involving claims that the plaintiffs were misclassified as independent contractors, may a class be certified based on the Industrial Welfare Commission definition of an employee as construed in *Martinez v. Combs* (2010) 49 Cal.4th 35, or *should the common law test for distinguishing between employees and independent contractors discussed in* [*Borello*] *control?*" (Italics added.)

[10] Justice Chin had argued that "the record does not support limiting our analysis to the common law test for employment and ignoring the FLSA factors." (*Ayala, supra*, 59 Cal.4th at p. 550, conc. opn. of Chin, J.)

several cases that deal with wages and expense-related issues. Yet *Borello*, *supra*, 48 Cal.3d 341, was the principal Supreme Court decision with which these appellate courts were concerned. Recently the Supreme Court commented on *Borello,* observing: "As we explained in [*Borello*]*,* the common law test of employment is not always appropriate beyond the tort context in which it was originally developed. [Citation.] Outside of tort, rather than 'rigidly' applying the common law test, we look to the ' "history and fundamental purposes" ' . . . of the statute at issue to determine whether the Legislature intended the test to apply." (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 235.)

In any event, the trial court's apparent conclusion that wage and hour laws are not remedial is unsupported by case law: " '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026–1027.) *Borello* itself indicates its holding has application to wage and hour cases: "A conclusion that the sharefarmers are 'independent contractors' under the Act would suggest a disturbing means of avoiding an employer's obligations under other California *legislation intended for the protection of 'employees*,' including laws enacted specifically for the protection of agricultural labor. These include the Agricultural Labor Relations Act [citation], statutes requiring the licensure and bonding of farm labor contractors [citation], *laws governing minimum wages, maximum hours*, and . . . employment of minors [citation] . . . ." (*Borello, supra,* 48 Cal.3d at p. 359, italics added.)

As noted above, *Borello*'s principles have been extended to unemployment insurance obligations, which, like wage and hour laws, reflect social policy designed to protect workers. Additionally, one reviewing court has recently held that because the Labor Code does not expressly define "employee" for purposes of section 2802, the

13

common law test of employment applies to that section. (*Estrada*, *supra*, 154 Cal.App.4th at p. 10.) That court also went on to discuss the "principal" and "additional factors" of the common law test as articulated by the Supreme Court in *Borello, supra,* 48 Cal.3d 341, and summarized above. (*Estrada,* at p. 10.) In sum, the trial court's reasoning in the statement of decision is not supported by *Ayala*.[11]

## III.    *Burden of Proof*

Plaintiff also asserts the trial court erred by failing to apply the presumption of employment and not shifting the burden to defendant as the party attacking the relationship. We agree.

The trial court concluded that plaintiff did not prove defendant had the right to control the details of his work, and also did not prove defendant exercised control over the manner and means of how he accomplished a desired result. The court also found defendant did not have the right to control how plaintiff performed the task of driving a taxicab.

It is established that "[o]ne seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees." (*Borello, supra,* 48 Cal.3d at p. 349.) Plaintiff also relies on section 3357, which he acknowledges is found in the division of the Labor Code addressing workers' compensation. That section provides: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." This presumption is contained in Division 4 of the Labor Code, and section 3350 provides that the definitions set forth therein apply to that "division." Plaintiff's case does not concern the workers' compensation statutes set forth in Division 4, but rather the wage and hour statutes set forth in Division 2 of the Labor Code. However, we agree with *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048

---

[11] Indeed, the *Ayala* court remanded the matter with directions to consider *Borello's* secondary factors. (*Ayala, supra,* 59 Cal.4th at p. 540.)

14

and *Cristler*, *supra*, 171 Cal.App.4th at page 83, to the extent those cases hold that the rebuttable presumption of employment in section 3357 applies to actions brought under Labor Code provisions falling outside workers' compensation.

Defendant contends it did not bear the burden of proof because plaintiff did not prove he rendered service to defendant. This contention is weak. As we noted in *Yellow Cab*: "[T]he essence of [Yellow Cab's] enterprise was not merely leasing vehicles. It did not simply collect rent, but cultivated the passenger market by soliciting riders, processing requests for service through a dispatching system, distinctively painting and marking the cabs, and concerning itself with various matters unrelated to the lessor-lessee relationship. . . . [¶] . . . The drivers, as active instruments of that enterprise, provide an indispensable 'service' to Yellow; the enterprise could no more survive without them than it could without working cabs." (*Yellow Cab*, *supra*, 226 Cal.App.3d at pp. 1293–1294.)

## IV.     *The Trial Court Failed to Properly Analyze* **Borello's** *Principles*

In addition to failing to properly allocate the burden of proof, to the extent that the trial court did consider *Borello,* its analysis is demonstrably inadequate. The court's statement of decision, while long, omits a proper discussion of the *Borello* factors that are germane to the issues. As noted above, both *Borello* and *Ayala* discuss the issue of control and the secondary factors derived from the Restatement in order to assess whether a plaintiff is an employee. While the trial court expended considerable effort in detailing the facts, it failed to conduct an actual analysis of how these facts relate to the key factors that the Supreme Court requires courts to consider in these types of cases.[12] We believe

_____

[12] To the extent the trial court's statement of decision does address the secondary factors, plaintiff argues the court's findings on several of the secondary employment factors are not supported by substantial evidence. Specifically, he asserts that the court erred in finding that he had an independent business of transporting passengers. He also challenges findings that the work of driving a taxicab requires "specialized skill," arguing this finding "belies the undisputed evidence and defies common sense." Additionally, he

there is a qualitative distinction between the facts in a case and the legal factors that underpin the *Borello* decision and its progeny.

Control is the most important consideration in deciding whether an individual is serving as an employee or independent contractor. The right of control need not extend to all details of the work. It is true plaintiff could do much on his own, including deciding which passengers to pick up and how much actual work time he engaged in during his shifts. However, this is not the end of the discussion. (See *Borello*, *supra*, 48 Cal.3d at p. 357.) That a degree of freedom is permitted to a worker, or is inherent in the nature of the work involved, does not automatically lead to the conclusion that a worker is an independent contractor. (See *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 934.) The key issue is how much retained control the employer has the right to exercise in the work relationship. (See *Ayala, supra,* 59 Cal.4th at p. 533.) The court below did not address this key distinction.

Significantly, the evidence suggests defendant retained ultimate control, namely, the right to terminate the employment at will. Plaintiff was terminated based on an allegation that, it appears, was never fully investigated. Nor was he allowed to contest the allegations against him before he was terminated. This factor alone presents strong evidence of an employment relationship: "Liability to discharge for disobedience or misconduct is strong evidence of control." (*Yellow Cab, supra,* 226 Cal.App.3d at p. 1298; see *Borello*, *supra*, 48 Cal.3d at p. 350 and *Ayala*, *supra*, 59 Cal.4th at p. 531.) In fact, *Ayala* calls this factor the strongest evidence of control, "often of *inordinate* importance" (*Ayala*, at p. 539, italics added), yet there is no discussion of this factor in the trial court's statement of decision. (See *Narayan v. EGL, Inc.* (9th Cir. 2010)

---

contends that "a taxicab company and the drivers who drive its taxicabs are in the same business and . . . their work is integrally related." While he concedes "employees do not typically earn wages from third parties," he observes defendant "unilaterally determined the flow of money in the Agreement."

616 F.3d 895, 900 (*Narayan*) [the right to discharge at will is the most important factor for determining whether an employment relationship exists].)

The Agreement indicates the parties are described as having an independent contractor relationship, and the trial court relied on this feature considerably for its decision. However, plaintiff testified he had to sign the Agreement as stated because otherwise defendant would not have provided him with a job. The Agreement was drafted by defendant and plaintiff had no say in its content. The Agreement thus has the appearance of an adhesion contract in that it was not the product of bargaining between the parties. There are several cases that note the mere fact the employment agreement characterizes the relationship of the parties in a particular way is not determinative of the actual legal status of the parties. (*Borello*, *supra*, 48 Cal.3d at p. 349; *Estrada*, *supra*, 154 Cal.App.4th at pp. 10–11.) Rather than assume the relationship from the content of an agreement that was drafted exclusively by defendant, the court was obligated to delve deeper into the parties' actual conduct and the economic realities of their relationship.

Additionally, it can reasonably be concluded that there is no skill other than driving a car that is required in this case. Plaintiff was not operating a semi-truck or engaging in substantial analytical tasks when driving a cab. The length of time for which the services were performed was ongoing over at least a four-year period.[13] Plaintiff paid his gate fee at the end of each day, not after completing a specific, prolonged task. The work he performed is part and parcel of what defendant does, which is operate cabs in San Francisco. A strong argument can be made that without plaintiff and others like him, the service defendant provides could not be accomplished.

---

[13] The Agreement had an automatic renewal clause; every 30 days it was automatically renewed. Plaintiff's agreement was renewed over a four-year period. This automatic renewal feature is another indicator of an at-will employment relationship. (See *Gonzalez v. Workers' Comp Appeals Bd.* (1996) 46 Cal.App.4th 1584, 1593; *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 203; *Narayan, supra,* 616 F.3d at pp. 902–903.)

17

The trial court also made questionable distinctions between what plaintiff did and what defendant did; however, it appears undisputed that both parties were engaged in the task of providing taxicabs to customers to take them from place to place. Furthermore, the tools used by plaintiff on a daily basis over the years he worked were always provided by defendant, including the cab and the tool to collect fares. Defendant also provided the insurance needed to place the cabs on the road, as well as the required work insurance costs such as workers' compensation.

## V.    *City Taxicab Regulations*

Finally, on the issue of control, much was made of the impact of SFMTA regulations. A putative employer does not exercise any degree of control merely by imposing requirements mandated by government regulation. (*N.L.R.B. v. Friendly Cab Co., Inc.* (9th Cir. 2008) 512 F.3d 1090, 1097, fn. 7 (*Friendly*), citing *Sida of Hawaii, Inc. v. N.L.R.B.* (1975) 512 F.2d 354, 359; see Gov. Code, § 53075.5, indicating the Legislature's policy on regulation of the taxicab industry.) Yet these municipal controls of the taxicab industry are in place to ensure public safety and an employer is under a special obligation to see that drivers follow these requirements. (*Secci v. United Independent Taxi Drivers* (2017) 8 Cal.App.5th 846, 861 (*Secci*) ["[I]f a franchise taxi company were to decline to carry out its obligations under the franchise agreement, it would place itself at risk of losing its franchise to the city."].)[14] As plaintiff points out, we have instances in this record where defendant imposed additional "controls" beyond the dictates of the SFMTA regulations, presumably to ensure driver compliance. For example, he argues that the SFMTA regulations do not require defendant to conduct

---

[14] Our singular reference to *Secci*, *supra*, 8 Cal.App.5th 846 is simply to indicate the import of governmental regulations on the cab industry. Municipal regulations can, as they did here, trigger motivation for employer control of their drivers. We make no further comment on the analysis in *Secci*.

18

safety reviews. Additional restrictions or modifications made to government regulations can be another indicia of employer control.

In *Friendly,* augmentation of government regulations imposed by the employer that exceeded a City of Oakland ordinance was found to have created further control over the drivers, indicating the parties had an employer/employee relationship: "While the incorporation of government regulations into a company's manual is not evidence of an employer-employee relationship, [citation], the NLRB reasonably found that Friendly's training requirements exceed those required by the City of Oakland's ordinance and constitute some degree of control over the drivers." (*Friendly*, *supra*, 512 F.3d at p. 1101.)

## VI.    *The Error Was Prejudicial*

In assessing prejudice from errors, we apply settled rules. In particular, we presume the judgment to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Plaintiff has the burden of affirmatively demonstrating prejudice, that is, that the errors have resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105 [appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice].)  " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 770, overruled in part on other grounds by *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 102–103 and *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. 5.)

As our discussion thus far demonstrates, the trial court's findings were prejudicial to plaintiff. After setting forth its ruling that *plaintiff* had not met the burden of proving

he rendered service to defendant or that defendant had the right to control the details of his work, the court perfunctorily indicated that it would have reached the same conclusions "even taking into account the additional factors and burden-shifting presumption applied in *Borello* and its progeny. . . ." The court then made 82 separate findings of fact, without setting forth a reasoned analysis as to why these points support its ultimate conclusions. Furthermore, the court omits a cogent analysis of the factors that courts must consider under *Borello*. Additionally, under *Ayala,* failure to properly assess the secondary factors is a legal misstep. Reviewing the secondary factors in those cases points to the weakness of the court's review here. In light of the above, it is reasonably probable that plaintiff would have received a more favorable ruling had the trial court properly allocated the burden of proof and undertaken a reasoned analysis of the secondary *Borello* factors.

## VII.    *Reversal and Remand is Required*

The trial court's determination of employee or independent contractor status is one of fact if it depends upon the resolution of disputed evidence or inferences. (*Borello*, *supra*, 48 Cal.3d at p. 349.) " 'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . .' " (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24.) The question is one of law only if the evidence is undisputed. (*Borello,* at p. 349.)

Plaintiff sets forth evidence supporting the conclusion that defendant had the right to control, evidence that he characterizes as "undisputed," including that: (1) defendant terminated the Agreement based on a passenger complaint, (2) defendant monitored plaintiff's driving by video review, (3) defendant required his social security number and maintained his personal information, (4) plaintiff could not negotiate the gate fee, (5) he was required to return the taxicab on request and his vehicle could be leased to another

20

driver if he was late, (5) defendant's waybills included communications to drivers regarding how to drive, (6) he did not represent himself as an independent business and could not drive a taxicab independent of defendant or for another taxicab company, (7) defendant controlled all the taxicab advertising and display, (8) defendant issued a written warning to plaintiff, and (9) defendant created a driver "help book." Defendant argues that these facts, and others plaintiff draws to our attention, were, in fact, disputed. These contentions can be addressed on remand.

We agree with plaintiff that the trial court failed to properly analyze and weigh the evidence under the factors required by *Borello.* However, we decline his invitation to determine his employment status in the first instance as a matter of law, and remand the matter to the trial court to address the facts in light of the principles set forth in this opinion.

## VIII. *Defendant's Appeal*

Defendant appeals from the trial's court's ruling denying its request for costs under Code of Civil Procedure section 1032.[15] As we have concluded the judgment must be reversed, defendant's appeal is moot.

## DISPOSITION

The judgment is reversed.

---

[15] This section provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).)

21

_____
Dondero, J.

I concur:


_____
Margulies, Acting P. J.

A146162  *Linton v. DeSoto Cab Co., Inc.*

**CONCURRING OPINION OF BANKE, J.**

I agree the trial court erred in its reading of *S.G. Borello & Sons, Inc v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*) and concur in the judgment reversing and remanding the case. I write separately to make the following three observations:

***First***, given the parties' arguments about, and the trial court's reading of *Borello*, I believe it is important to differentiate between that part of the Supreme Court's opinion which pertains to the common law test for determining employment status, and that part of its opinion which pertains to "other considerations" the court also considered in determining employment status under the Worker's Compensation Act (Lab. Code, § 3200 et seq.).

In the instant wage case (Lab. Code, §§ 201, 203, 221), as the parties have briefed and argued the matter, we are concerned only with the scope of the common law test. And in *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 532, fn. 3 (*Ayala*), the Supreme Court expressly declined to assume that "those further considerations" on which it elaborated in *Borello* (and which "[s]trictly speaking . . . are not part of the common law test for employee status") apply to wage claims. (*Id.* at p. 532, fn 3.) Rather, the high court left that issue for another day.[1] (*Ibid.*)

As I read *Borello*, the point it makes as to the *common law test* is that it is no longer confined, as it historically was, to examination of the " 'control of details.' " (*Borello*, *supra*, 48 Cal.3d at pp. 350–351.) While under "the common law, ' "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result

---

[1] The court also did not address in *Ayala* whether the "additional tests for employee status" set forth in wage orders apply to wage claim cases (*Ayala*, *supra*, 59 Cal.4th at p. 531), an issue now pending before the court in *Dynamex Operations West, Inc. v. Superior Court* (2014) 230 Cal.App.4th 718, review granted January 28, 2015, S222732.

desired," ' " the high court explained that the courts have "long recognized" that "the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements." (*Id.* at p. 350.) Accordingly, "the authorities . . . endorse several 'secondary' indicia of the nature of a service relationship." (*Ibid.*) " '[S]trong evidence' " of an employment relationship " 'is the right to discharge at will, without cause.' " (*Ibid.*, quoting *Tieberg v. Unemployment Ins. Appeals Bd.* (1970) 2 Cal.3d 943, 949.) "Additional factors[,] . . . derived principally from the Restatement Second of Agency[,] . . . include[:] (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal of the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee."[2] (*Borello*, at p. 351.) Generally, these " 'individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' " (*Ibid.*, quoting *Germann v. Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 776, 783.)

As the majority opinion states, in *Ayala*, the high court reaffirmed that the common law test, as it is now applied by the courts, embraces both " ' "the right to control the manner and means of accomplishing the result desired" ' " and the "range of secondary indicia drawn from" the Second and Third Restatements of Agency. (*Ayala*, *supra*, 59 Cal.4th at pp. 530–532; see *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1347–1348; *Estrada v. FedEx Ground Package System, Inc.* (2007)

---

[2] The court also noted the similarity of a number of these factors to the factors the Legislature has identified in determining who must attain a contractor's license. (*Borello*, *supra*, 48 Cal.3d at p. 351, fn. 5.)

2

154 Cal.App.4th 1, 10–11; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 85–87 (*Cristler*).)

The remainder of *Borello* discusses the "other considerations" pertinent to worker's compensation claims that the court declined to assume in *Ayala* are applicable to wage claims. (*Borello*, *supra*, 48 Cal.3d at p. 351 ["concept of 'employment' embodied in the [Worker's Compensation] Act *is not inherently limited by* common law principles"], italics added; *Id.* at p. 352 ["[f]ederal courts have long recognized that the distinction between tort policy and social-legislation policy justifies *departures from* common law principles"], italics added; *Id.* at p. 352, fn. 6 ["[w]e find *no* similar express *confinement* to common law principles in our workers' compensation scheme"], italics added; *Id.* at pp. 352–353 ["[a] number of state courts have agreed that in worker's compensation cases, the employee-independent contractor issue cannot be decided absent consideration of the remedial statutory purpose"]; *Id.* at p. 353 [California appellate courts "have suggested that traditional California tests for independent contractor status *must be supplemented* in compensation cases"], italics added; *Id.* at p. 354 ["purposes of the [Worker's Compensation] Act are several"]; *Id.* at pp. 354–355 [six-factor test developed in worker's compensation cases in other jurisdictions bears "many points of individual similarity" with "our own traditional Restatement tests"; all are relevant "to the inherently difficult determination whether a provider of service is an employee or an excluded independent contractor for purposes of workers' compensation law"].) In my view, these "other considerations" that augment, or that are departures from, the common law test are not relevant here, given the parties focus on the common law test.

*Second*, while I agree there is a presumption that an individual rendering service is an employee, I am not persuaded that, in a wage case, this presumption is supplied by the statutory presumption set forth in the Worker's Compensation Act (Lab. Code, § 3357). Rather, I think it is supplied by binding Supreme Court authority, which has made this presumption part of the state's common law test of employment status.

Labor Code section 3357 is in Division 4 (Worker's Compensation Act [Lab. Code, § 3200 et seq.]), Part 1, Chapter 2, Article 2 (entitled "Employees"). The first

3

statute of Article 2, section 3350, states: "Unless the context requires, the definitions set forth in this article shall govern the construction and meaning of the terms and phrases used in *this division*," namely Division 4, which contains the Worker's Compensation Act. (Lab. Code, § 3350, italics added.) Labor Code section 3357, specifically, is one of a number of statutes defining who is and is not an employee under the Worker's Compensation Act. (E.g., Lab. Code, § 3350 et seq.) Had the Legislature intended that this statutory presumption in the Worker's Compensation Act also apply in the wage and hour context, it could have codified the presumption elsewhere in the Labor Code for broader application, or it could have replicated the language of Labor Code section 3357 in the wage and hour laws, as it has in other contexts. (See e.g. Lab. Code, § 2750.5 [including rebuttable presumption of employee status in contractor licensing statutes].[3]) But it did neither.

In *Borello*, the Supreme Court, of course, cited to the statutory presumption set forth in Labor Code section 3357, since it was a worker's compensation case. (*Borello*, *supra*, 48 Cal.3d at p. 349.) In *Ayala*, the Supreme Court made no mention of this statutory presumption in discussing the common law test in the context of assessing class treatment of wage claims. (*Ayala*, *supra*, 59 Cal.4th at pp. 530–540.)

As the majority observes, courts of appeal have applied Labor Code section 3357 outside the worker's compensation context. They have done so, however, without analytical discussion. (See *Cristler*, *supra*, 171 Cal.App.4th at pp. 77, 83–84 [in wage and hour case, considering whether jury instructions adequately incorporated Lab. Code, § 3357 presumption]; *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048 [in OSHA retaliation case, stating presumption and citing to Lab. Code, § 3357]; see also *Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 737, fn. 4 [in breach of

---

[3] This statute also states: "For purposes of workers' compensation law, this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 [the Worker's Compensation Act] and Division 5." (Lab. Code, § 2750.5, subd. (c).)

implied agreement to terminate only for cause case, stating presumption in footnote and citing to Lab. Code, § 3357 and a worker's compensation case].)

Decades prior to *Borello*, however, our Supreme Court stated—outside the worker's compensation context—in *Robinson v. George* (1940) 16 Cal.2d 238, 242 (*Robinson*), that "[t]he rule, as stated by plaintiff, is that the fact that one is performing work and labor for another is prima facie evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary." (Italics omitted.) *Robinson* was a common law personal injury case against a driver and the driver's employer, a newspaper company. (*Id.* at p. 240.) The company maintained the driver was an independent contractor and it, therefore, was not liable for the driver's conduct. (*Ibid.*) In support of the presumption of employment status, the high court did not cite to Labor Code section 3357, but did cite to a worker's compensation case. (*Robinson*, at p. 242.)

Courts of appeal subsequently cited *Robinson's* prima facie evidence rule, again outside the worker's compensation context. (E.g., *Bemis v. People* (1952) 109 Cal.App.2d 253, 264 (*Bemis*) [action to recover unemployment compensation contributions paid under protest]; *Pierson v. Holly Sugar Corp.* (1951) 107 Cal.App.2d 298, 301 [plaintiff injured on defendant's premises].) In fact, in *Bemis*, the appellate court specifically applied the common law test to determine employment status because the Unemployment Insurance Act "contain[ed] no direct definition of the term 'employee.'" (*Bemis*, at p. 262.) After discussing the general common law test, the court went on to state "[i]t is also the law that, generally speaking, the burden of proof is on the party attacking the employment relationship [citation], or, at least, when a prima facie case of employment has been established, the burden shifts to the one claiming that the so-called employee was in fact an independent contractor." (*Id.* at p. 264.)

Accordingly, in my view, the presumption of employment status where the common law test applies, as it does here, is supplied not by the Worker's Compensation Act, but by the common law, itself, as applied by the Supreme Court in *Robinson*.

5

***Third***, in my view, *Secci v. United Independent Taxi Drivers, Inc.* (2017) 8 Cal.App.5th 846 (*Secci*) adds nothing to this case, except repeats the established principle that compliance with governmental regulatory controls is not evidence of an employment relationship. Rather, in *Secci*, the Court of Appeal addressed the *distinction* between considering regulatory controls in determining whether a worker is an employee or independent contractor, and in determining whether a worker is an agent of a principal. The plaintiff in *Secci* sustained personal injuries in a vehicle accident with a taxicab and sought to recover from the taxi company. (*Id*. at p. 850) Accordingly, the relationship of the driver to the cab company arose in the context of traditional vicarious liability. The jury found the driver was not an employee, but did find he was an agent of the company. (*Id.* at p. 853.) The trial court granted judgment notwithstanding the verdict to the company on the agency determination. (*Ibid.*) The plaintiff appealed this ruling. Accordingly, the jury's finding that the taxi driver was not an employee of the company was not at issue, nor did the appellate court discuss it.

The Court of Appeal reversed the judgment notwithstanding the verdict, distinguishing employee/independent contractor cases, and ruling that regulatory controls can be considered, in determining whether an *agency* relationship exists, even if they do not establish control for purposes of determining whether a worker is an employee or an independent contractor. (*Secci*, *supra*, 8 Cal.App.5th at pp. 858–862.) The court then examined the evidence that had been before the jury, including the evidence of regulatory controls, and concluded substantial evidence had supported the jury's agency finding. It therefore reversed the judgment notwithstanding the verdict in favor of the cab company and reinstated the jury's verdict that the company was vicariously liable for its agent's negligence. (*Id.* at p. 862.) In short, the agency issue *Secci* addressed is not in question here. Rather, the issue here is whether the plaintiff is an employee or an independent contractor.

_____
Banke, J.

A146162  *Linton v. DeSoto Cab Company, Inc.*

Trial Court:          San Francisco County Superior Court

Trial Judge:          Hon. Honorable A. James Robertson II

Counsel:

      Seibert & Bautista, Shannon Seibert, Joe Bautista, for Defendant and Appellant DeSoto Cab Company, Inc.

      State of California Division of Labor Standards Enforcement, M. Colleen Ryan, for Plaintiff and Appellant Darnice Linton